UNITED STATES of America,
Appellant,

v.

James RATTOBALLI, Defendant–
Appellee.

No. 05–1562–CR.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 23, 2005.

Decided: June 15, 2006.

Amended: June 21, 2006.

Andrea Limmer, Attorney, U.S. Department of Justice, Washington, D.C. (R. Hewitt Pate, Assistant Attorney General; Thomas O. Barnett, Acting Assistant Attorney General; Makan Delrahim, Scott D. Hammond, and Gerald F. Masoudi, Deputy Assistant Attorneys General; John J. Powers, III, and Robert B. Nicholson, Attorneys, U.S. Department of Justice, Washington, D.C.; Rebecca Meiklejohn and Elizabeth Prewitt, Attorneys, U.S. Department of Justice, Antitrust Division, New York, N.Y., on the brief), for Appellant.

Randall D. Unger (Steve Zissou, on the brief), Bayside, N.Y., for Defendant–Appellee.

Before WALKER, Chief Judge,
WINTER and JACOBS, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

This appeal raises several important post-*Booker* issues, including the bounds of reasonableness review, *United States v. Booker*, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the requirement that a district judge provide a written statement of reasons for imposing a non-Guidelines sentence [1] outside the advisory Guidelines range, 18 U.S.C. § 3553(c)(2). The appeal is taken from a February 18, 2005, judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) sentencing defendant-appellee James Rattoballi to one year of home confinement and five years' probation. The district court required that Rattoballi pay $155,000 in restitution; it did not impose a fine, citing Rattoballi's inability to pay. We hold that Rattoballi's non-Guidelines sentence, which represents a substantial deviation from the recommended Guidelines range of 27 to 33 months' imprisonment, is unreasonable. We also hold that if a district court elects to impose a non-Guidelines sentence outside the applicable Guidelines range, it has a statutory obligation to include a statement in the written judgment setting forth "the specific reason for the imposition of a sentence

---

1. A non-Guidelines sentence is a sentence that is "neither within the applicable Guidelines range nor imposed pursuant to the departure authority in the [Sentencing] Commission's policy statements." *United States v. Crosby*, 397 F.3d 103, 111 n. 9 (2d Cir.2005).

different from" the recommended Guidelines sentence. 18 U.S.C. § 3553(c)(2). Finally, we find clear error in the district court's conclusion that Rattoballi lacked the ability to pay a fine. Accordingly, we vacate and remand for resentencing.

## BACKGROUND

James Rattoballi is a forty-year veteran of the printing industry; for roughly the past twenty years, he has served as president and co-owner of Print Technical Group, Inc., a printing brokerage firm that performed about $7 million in annual sales and employed approximately twelve people. In recent years, Rattoballi also has served as a commissioned sales representative for two graphic services companies, Master Eagle Graphic Services, Inc. and LTC Fusion, Inc.

Between 1990 and 2001, Rattoballi paid substantial kickbacks to executives at advertising agencies, including Mitchell Mosallem at Grey Global Group, Inc. ("Grey"), in return for these agencies placing their business with his companies. The kickbacks included cash, made-to-order Italian clothing, a $55,000 diamond-encrusted platinum watch, limousine services, meals, airline tickets, and personal printing services. For their part, the agencies' executives would steer contracts to Rattoballi and keep his companies on their approved-vendor lists. Rattoballi managed to offset some of the costs associated with these kickbacks by submitting inflated invoices to the advertising agencies; the agencies would then pass these inflated invoices along to their clients.

Starting in 1994, Rattoballi also submitted exaggerated "cover" bids to Grey in order to help Mosallem create the illusion of competition among potential suppliers to a lucrative client account. Mosallem used Rattoballi's bids, along with those of others, to help steer contracts to other preferred vendors, all at above-market prices. In exchange for his cooperation, Rattoballi continued to enjoy favored status at Grey; his companies earned approximately $1 million annually from Grey.

In 2002, Rattoballi was charged in an information with one count of conspiracy to rig bids in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371; the information focused exclusively on Rattoballi's dealings with Mitchell Mosallem at Grey.

Rattoballi entered into a plea agreement with the government. Under the terms of the agreement, Rattoballi agreed "to provide full, complete, and truthful cooperation" to the government and to "disclose fully, completely, and truthfully all information" related to the government's investigation. Rattoballi also agreed to appear as a witness for the government in any case brought in connection with the charges. In exchange, the government agreed not to prosecute Rattoballi further for any crimes arising out of the same conduct. In addition, the government agreed that if Rattoballi abided by the terms of the plea agreement and provided "substantial assistance in any investigations or prosecutions," it would file a § 5K1.1 letter advising the sentencing judge to take Rattoballi's cooperation into account during sentencing. *See* U.S.S.G. § 5K1.1.

Over the next two years, the government interviewed Rattoballi on five occasions, and each time he was asked about the payments he made to Mosallem and other purchasing agents. Rattoballi readily admitted that he gave Mosallem and other purchasing agents clothing and additional goods and services; he denied ever having given Mosallem, or any of the other

purchasing agents, cash or items of significant value.

In the course of preparing for Mosallem's trial, the government became suspicious that Rattoballi had been less than fully cooperative with its investigation. The government's suspicions proved accurate. After the government confronted Rattoballi with information obtained from other witnesses, Rattoballi admitted for the first time that he made substantial cash payments to Mosallem and other purchasing agents. Rattoballi also admitted that he helped to provide Mosallem with a diamond and platinum watch that listed for $87,000 but was purchased wholesale for $55,000. Finally, Rattoballi admitted that he had spoken with Mosallem about the investigation, and had agreed not to mention the cash or the watch to the government. As a result of Rattoballi's mendacity and its obvious effect on his credibility as a witness, the government determined that it could not call him as its witness at Mosallem's trial, which later was avoided when Mosallem pled guilty. The government asserts that Mosallem's restitution order was undervalued because the government was not made aware prior to Mosallem's sentencing of the full extent of the kickback scheme.

In its sentencing memorandum, the government argued that Rattoballi's total offense level under the Guidelines was 21, producing a range of 37 to 46 months' imprisonment; the Probation Office concurred in this calculation, which rested on that office's assessment of the fraud loss and included a two-level upward adjustment for obstruction of justice and no reduction for acceptance of responsibility. Rattoballi sought, in his sentencing memorandum, a non-Guidelines sentence consistent with the district court's discretionary authority following *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). He challenged the government's fraud-loss calculations and its proposed adjustments, and he argued for a sentence that did not include a term of imprisonment. At the same time, Rattoballi admitted that he had "accumulated some modest wealth" and was "capable of paying a modest fine."

At sentencing, the district court accepted the government's recommendation for a two-level enhancement for obstruction of justice but concluded that Rattoballi still was entitled to a two-level reduction for acceptance of responsibility, based primarily on the fact that Rattoballi did not force the government to go to trial. The district court also adjusted the fraud-loss calculation from $796,000 to $396,000, which led to an additional one-level reduction. These rulings resulted in an adjusted offense level of 18 and a Guidelines range of 27 to 33 months' imprisonment; the rulings and the resulting range are not contested on appeal. After listening to the defendant, the district court stated that it had "considered the guidelines very, very seriously," and it acknowledged that Rattoballi stood convicted of "substantial crimes" that "require appropriate penalties." Nevertheless, the district court stated that it had a problem with giving Rattoballi a "prison sentence." It then set forth its reasons for imposing a non-Guidelines sentence:

> The problem I have with a prison sentence is as follows: Despite the difficulty and the delay in coming clean with the whole range of criminal conduct, this defendant has pleaded guilty, and he has now, I believe, admitted the full range of his criminal conduct. He did not persist in denying, he did not force the government to go to trial, and that has always been regarded by courts as a very substantial matter.

Moreover, if nothing else were done to Mr. Rattoballi, this case has inflicted punishment. It has been hanging over him for a period of three years. Now, there were reasons for that, and part of it was the idea that he might cooperate and testify. But be that as it may, the case has been hanging over him for three years. Without any doubt, it has taken a severe toll on his business, although it is not completely destroyed, his business, fortunately, but he has been convicted of two federal crimes. That is not without meaning as far as punishment, and as I say, his business has been, although not completely destroyed, has been severely harmed.

It seems to me that both society and those closer to Mr. Rattoballi would be legitimately benefited by having Mr. Rattoballi attempt to continue in his small business. He employs people, he has a partner, and I have no doubt that a prison sentence would absolutely end that business. It is in the interests of society that he try the best he can to be from here on out a law-abiding and productive member of society.

I also have in mind that, although there is certainly no excuse for the crimes he committed, the evidence in this whole litigation picture is that Mosalle[m] and was [sic] a person who exerted an enormous amount of pressure upon other people and got them in trouble. They, of course, should not have gotten into trouble. They should have resisted. They should have done other things.

But Mosalle[m]'s determination, his demands, his insatiable insistence were very difficult to deal with. Again, as I have said, no excuse, but he's part of the picture.

Now, there were kickbacks paid to another agency, and it did not involve Mr. Mosalle[m], so what I say about Mr. Mosalle[m] is not the entire excuse, but it's part of the picture and an important part of the picture.

The district court then imposed a non-Guidelines sentence of one year of home confinement and five years' probation. It also ordered Rattoballi to pay $155,000 in restitution, while commenting that Rattoballi would need to work in order to be able to pay such a significant amount in restitution. The district court never addressed the issue of a fine and did not impose one; nor did it impose the mandatory special assessment of $200.

Shortly after the hearing, the court issued its written judgment. The judgment did not contain the district court's reasons for imposing a non-Guidelines sentence below the advisory Guidelines range; it stated only that "[t]he court deems the Guidelines to be advisory and imposes sentence notwithstanding it's [sic] determinations." The court did include the $200 mandatory special assessment in the written judgment, but did not impose a fine, citing Rattoballi's "inability to pay."

The government preserved its objections and filed a timely notice of appeal.

## DISCUSSION

■ We review a district court's sentencing decisions for reasonableness. *United States v. Booker,* 543 U.S. 220, 260–61, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *United States v. Crosby,* 397 F.3d 103, 114–15 (2d Cir.2005). Reasonableness review has two components: (1) procedural reasonableness, whereby we consider such factors as whether the district court properly (a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other factors outlined in 18

U.S.C. § 3553(a)[2]; and (2) substantive reasonableness, whereby we consider whether the length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. § 3553(a). *Crosby*, 397 F.3d at 113–15. After *Booker*, we still review a district court's interpretation of the Sentencing Guidelines *de novo* and evaluate its findings of fact under the clearly erroneous standard. *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir.2005).

The government lodges three separate claims of error on this appeal: (1) the sentence imposed by the district court differs substantially from the advisory Guidelines range and is unreasonably low; (2) the district court failed to include a written statement setting forth its reasons for imposing a non-Guidelines sentence below the advisory Guidelines range; and (3) the court's finding of an inability to pay a fine is clearly erroneous and the failure to impose any fine is unreasonable. We address these arguments in turn.

## I. The Reasonableness of the District Court's Non–Guidelines Sentence.

■ *Booker* worked a fundamental change in federal sentencing. No longer are the Sentencing Guidelines mandatory; district courts are now simply under a duty to consider them, along with the other factors set forth in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 261, 125 S.Ct. 738; *Crosby*, 397 F.3d at 110. At the same time, we have emphasized that *Booker* did not signal a return to wholly discretionary sentencing. *Crosby*, 397 F.3d at 113 (stating that "it would be a mistake to think that, after *Booker/Fanfan*, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum"). While district courts enjoy discretion following *Booker*, that discretion must be informed by the § 3553(a) factors; a district court cannot "import [its] own philosophy of sentencing if it is inconsistent" with the § 3553(a) factors. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir.2005); *see also United States v. Smith*, 445 F.3d 1, 3 (1st Cir.2006) (stating that "[t]he sentencing court's discretion remains constrained by 18 U.S.C. § 3553(a)").

Our own review for reasonableness, though deferential, will not equate to a "rubber stamp." *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir.2006). We

2. Section 3553(a) provides, in pertinent part: The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [and recommended by the Sentencing Guidelines] . . .
(5) any pertinent policy statement . . . issued by the Sentencing Commission . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

are also under a duty to consider § 3553(a). *Booker*, 543 U.S. at 261, 125 S.Ct. 738. Thus, while reasonableness admits to "a range, not a point," *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir.2005), it also is a concept that implies boundaries, even if those boundaries provide for some latitude, *United States v. Canova*, 412 F.3d 331, 350 (2d Cir.2005) (noting that reasonableness review is necessarily "deferential"); *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir.2005) ("Although the brevity or length of a sentence can exceed the bounds of 'reasonableness,' we anticipate encountering such circumstances infrequently.").

In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress. *See United States v. Cage*, 451 F.3d 585, 593, 2006 WL 1554674, at *7 (10th Cir.2006) (stating that "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration when we determine reasonableness"); *see also United States v. Fernandez*, 443 F.3d 19, 28 (2d Cir.2006) (stating that "the Guidelines range should serve as 'a benchmark or a point of reference or departure' for the review of sentences" (citations omitted)) (quoting *United States v. Rubenstein*, 403 F.3d 93, 98–99 (2d Cir.2005)). "[T]he guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges." *United States v. Jimenez–Beltre*, 440 F.3d 514, 518 (1st Cir.2006) (en banc) (citation altered) (emphasis removed) (citing *Booker*, 543 U.S. at 261, 125 S.Ct. 738; 28 U.S.C. § 994(*o*)); *see also United States v. Johnson*, 445 F.3d 339, 342 (4th Cir.2006) ("By now, the Guidelines represent approximately two decades of close attention to federal sentencing policy."); *United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006) ("The Guidelines were fashioned taking the other § 3553(a) factors into account and are the product of years of careful study."); *United States v. Cooper*, 437 F.3d 324, 331 n. 10 (3d Cir.2006) ("The federal sentencing guidelines represent the collective determination of three governmental bodies—Congress, the Judiciary, and the Sentencing Commission—as to the appropriate punishments for a wide range of criminal conduct.") (citations omitted); *United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir.2005) ("The Sentencing Guidelines represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."). It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider. 28 U.S.C. §§ 991(b), 994.

We appreciate that "the guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases." *Jimenez–Beltre*, 440 F.3d at 518 (emphasis removed). Accordingly, we have declined to adopt *per se* rules, opting instead to fashion the mosaic of reasonableness through case-by-case adjudication. *Crosby*, 397 F.3d at 115; *see also Fernandez*, 443 F.3d at 27 (noting that, in *Jimenez–Beltre*, 440 F.3d at 518, the First Circuit likewise rejected the view that a Guidelines sentence is presumptively reasonable). Nevertheless, on appellate review, we will view as inherently suspect a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead reflects attributes common to all defendants. Disparate sentences prompted the

passage of the Sentencing Reform Act and remain its principal concern. *See Booker*, 543 U.S. at 263–64, 125 S.Ct. 738; 18 U.S.C. § 3553(a)(6); 28 U.S.C. § 991(b)(1)(B); *see also* S.Rep. No. 98–225, at 52 (1983) ("A primary goal of sentencing reform is the elimination of unwarranted sentencing disparity."), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3235.

Further, in discharging our duty to review sentences for reasonableness, we are required to consider any pertinent policy statements issued by the Sentencing Commission or the Congress (just as the district courts are required to consider those policy statements when imposing sentence). *See Booker*, 543 U.S. at 261, 125 S.Ct. 738; 18 U.S.C. § 3553(a)(5); *see also* 28 U.S.C. § 994(e) (stating that the Commission, in promulgating the Guidelines and its policy statements, shall assure that they "reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant"). The Commission derives its authority to issue these policy statements from an express congressional mandate. 28 U.S.C. § 994(a)(2), (d). Although the district courts are not required to follow these statements in every case, they must consider them-even when imposing a non-Guidelines sentence. *See Crosby*, 397 F.3d at 112–13 (stating that district courts must consider applicable policy statements).[3] A non-Guidelines sentence that a district court imposes in reliance on factors incompatible with the Commission's policy statements may be deemed substantively unreasonable in the absence of persuasive explanation as to why the sentence actually comports with the § 3553(a) factors. *See* 18 U.S.C. § 3553(a)(5); *Moreland*, 437

F.3d at 434 ("A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission.").

Finally, while we have refused to "prescribe any formulation a sentencing judge will be obliged to follow in order to demonstrate discharge of the duty to 'consider' the Guidelines," *Crosby*, 397 F.3d at 113, and putting aside for the moment the "specific statement" requirement in 18 U.S.C. § 3553(c)(2), *see infra*, we note that several other circuits have endorsed a rule that requires district courts to offer a more compelling accounting the farther a sentence deviates from the advisory Guidelines range, *United States v. Dean*, 414 F.3d 725, 729 (7th Cir.2005) (stating that "the farther the judge's sentence departs from the guidelines sentence (in either direction-that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer"); *accord United States v. Smith*, 445 F.3d 1, 4 (1st Cir.2006); *United States v. Smith*, 440 F.3d 704, 707 (5th Cir.2006); *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006); *United States v. McMannus*, 436 F.3d 871, 874 (8th Cir.2006); *cf. United States v. Simpson*, 430 F.3d 1177, 1187 n. 10 (D.C.Cir.2005). While we have yet to adopt this standard as a rule in this circuit, and do not do so here, we emphasize that our own ability to uphold a sentence as reasonable will be informed by the district court's statement of reasons (or lack thereof) for the sentence that it elects to impose. *Crosby*, 397 F.3d at 116; *see also United States v. Fairclough*, 439 F.3d 76, 80 (2d Cir.2006) (per curiam) (evaluating

---

**3.** As we recognized in *Crosby,* however, "in some contexts, a policy statement is more than advisory." 397 F.3d at 116 n. 15. For example, if a district court rejects authoritative policy statements in imposing a Guidelines sentence, this procedural error may require that we vacate that sentence as unreasonable. *See Crosby,* 397 F.3d at 115.

the district court's sentence in light of the reasons that it offered, including its statement that "the Guidelines range was inadequate to address the 'nature and circumstances' of the offense"); *United States v. Green*, 436 F.3d 449, 456 (4th Cir.2006) (recognizing that reasonableness review is informed by the statement of reasons articulated by the district court). Indeed, a district court may be able to justify a marginal sentence by including a compelling statement of reasons that reflect consideration of § 3553(a) and set forth why it was desirable to deviate from the Guidelines. In the absence of such a compelling statement, we may be forced to vacate a marginal sentence where the record is insufficient, on its own, to support the sentence as reasonable. *Cf. United States v. Castro–Juarez*, 425 F.3d 430, 433 (7th Cir. 2005) (stating that a court of appeals must "assess whether the district court's choice of sentence is adequately explained given the record" on appeal). With these thoughts in mind, we turn to Rattoballi's non-Guidelines sentence.

■ The Guidelines, after adjustments, contemplated a range between 27 and 33 months' imprisonment. Notwithstanding this recommendation, the district court rejected a prison sentence in favor of a non-Guidelines sentence of one year of home confinement and five years' probation. It should go without saying that the district court's sentence represents a substantial deviation from the recommended Guidelines range.

The district court attempted to substantiate its non-Guidelines sentence through a statement that essentially rested on four points of support: (1) despite the difficulty and delay in coming clean, Rattoballi eventually admitted to all wrongdoing and pled guilty; (2) Rattoballi suffered significant punishment based on the fact that he was charged and stood convicted of two federal

crimes; (3) a term of imprisonment would end Rattoballi's business; and (4) Rattoballi's unlawful conduct was brought about, in part, by Mosallem's insatiable appetite for luxurious goods and services. We find at least five problems with the points advanced by the district court.

First, the district court's statement relies, in part, on factors that are common to all defendants. Every convicted felon suffers the indignity and ill-repute associated with a criminal conviction. Such a reliance is contrary to 18 U.S.C. § 3553(a)(6), which calls for a reduction in unwarranted disparities among similarly situated defendants.

Second, the district court appears to have overlooked or ignored the Commission's policy statements in violation of 18 U.S.C. § 3553(a)(5). As we have previously noted, in assessing a sentence for reasonableness, we are required to consider any applicable policy statements issued by the Commission or Congress. *See supra; see also Booker*, 543 U.S. at 261, 125 S.Ct. 738; 18 U.S.C. § 3553(a)(5). The district court's sentence fails to take into account the Commission's view "that alternatives such as community confinement not be used to avoid imprisonment of antitrust offenders." U.S.S.G. § 2R1.1, cmt. n. 5. The Guidelines reflect a considered determination by the Commission that jail terms are the most effective deterrent for antitrust violations. *See id.* § 2R1.1 cmt. background (stating that "in very few cases will the guidelines not require that some confinement be imposed"); Amendments to the Sentencing Guidelines for United States Courts, 56 Fed.Reg. 22,762, 22,775 (May 16, 1991) (explaining that the offense levels for antitrust violations were increased "to make them more comparable to the offense levels for fraud with similar amounts of loss"); *see also* 1 Practice Under the Federal Sentencing Guidelines

§ 13.02, at 13–4 (Phylis Skloot Bamberger & David J. Gottlieb eds., 4th ed. 2004 Supp.) (noting that "[j]ail terms were urged on the Commission as the most effective deterrent by both the Antitrust Division of the Department of Justice and the private bar because imprisonment, even in a minimum security prison, is a terrifying and degrading experience for otherwise law-abiding businessmen" (footnotes omitted)). The Sentencing Commission also has explained that jail terms are ordinarily necessary for antitrust violations because they "reflect the serious nature of and the difficulty of detecting such violations." Amendments to the Sentencing Guidelines for United States Courts, 56 Fed.Reg. at 22,775. Although the district court is not required to adhere to the policy statements promulgated by the Commission, we do consider them in reviewing a sentence for reasonableness, and the policy statements make plain that imprisonment is generally warranted for antitrust offenders.[4]

Third, the district court stated that Rattoballi's business would "absolutely end" if Rattoballi was sentenced to a term of imprisonment. We have previously held that a sentencing court may consider—in extraordinary cases—the strains that a criminal investigation places on a defendant's business. *See United States v. Milikow-*

*sky,* 65 F.3d 4, 9 (2d Cir.1995). But such circumstances are not present here. The record does not support the district court's finding that a term of imprisonment would cause Rattoballi's business to "absolutely end"; neither Rattoballi nor his business partner predicted such an outcome. Moreover, we are disinclined to accord the prospect of business failure decisive weight when it is a direct function of a criminal investigation that had its origins in the defendant's own unlawful conduct.

Fourth, the district court cited the fact that Rattoballi agreed to plead guilty and eventually admitted to all wrongdoing. The district court already had rejected the government's argument that Rattoballi was not entitled to a two-level reduction under Guideline § 3E1.1 to his calculated Guidelines range for "acceptance of responsibility." To eliminate Rattoballi's term of imprisonment altogether based on this reason would give him credit for cooperation twice, which was especially unwarranted under the circumstances of this case. Giving such significant weight to this factor would effectively ignore, indeed reward, the defendant's deliberate withholding of information and his agreement with Mosallem to obstruct justice by not disclosing the full extent of the kickback scheme to the government.

---

4. It is unclear from the record whether the district court also took into account factors that the Commission and Congress have deemed "not ordinarily relevant" in imposing sentences. *See, e.g.,* U.S.S.G. § 5H1.2 (vocational skills); *id.* § 5H1.5 (employment record); *id.* § 5H1.10 (socio-economic status); *see also* 28 U.S.C. § 994(e) (stating that the Commission, in promulgating the Guidelines and its policy statements, shall assure that they "reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant"). To the extent that the district court relied upon these factors, however, it did not point to any extraordinary circumstances particular to Rattoballi and not common to other similarly situated defendants, and our own review of the record reveals none. While this alone does not render Rattoballi's sentence unreasonable, it means that the sentence rests upon a consideration that contradicts one of the § 3553(a) factors that we must consider in reviewing that sentence for reasonableness— namely, the Commission's policy statements. *See* 18 U.S.C. § 3553(a)(5); *cf. Fairclough,* 439 F.3d at 81 (suggesting that a district court's authority to depart from the Guidelines can be considered in support of the reasonableness of a non-Guidelines deviation).

Finally, the district court relied upon Rattoballi's lesser culpability, at least in relation to Mosallem, to support a sentence that did not include a term of imprisonment. Although a defendant's culpability is always relevant in imposing sentence, we fail to see how Rattoballi's lesser culpability could justify the sentence that was imposed in this case, and no sufficient justification was offered by the district court. Rattoballi engaged in criminal conduct for more than a decade, to the profit of both himself and his business. We also note that the recommended Guidelines sentence of 27 to 33 months' imprisonment was substantially lower than the 70–month term of imprisonment that Mosallem received.

After considering the record as a whole, we conclude that Rattoballi's sentence is unreasonable when assessed against the balance of the § 3553(a) factors. *See* 18 U.S.C. § 3553(a)(2)-(6). To the extent that the district court relied upon the history and characteristics of the defendant, *see* 18 U.S.C. § 3553(a)(1), we conclude that, on this record, those considerations are neither sufficiently compelling nor present to the degree necessary to support the sentence imposed, *cf. United States v. Givens*, 443 F.3d 642, 646 (8th Cir.2006) (holding that the district court "gave too much weight" to the defendant's "history and characteristics" and "not enough to the

other portions of section 3553(a)"). A sentence must reflect consideration of the balance of the § 3553(a) factors; unjustified reliance upon any one factor is a symptom of an unreasonable sentence. *See United States v. Hampton*, 441 F.3d 284, 288 (4th Cir.2006) (stating that " 'excessive weight' may not be given to any single factor" under § 3553(a) (citation omitted)); *see also Cage*, 451 F.3d at 595, 2006 WL 1554674, at *9 ("The problem with the [district court's] sentencing decision [was] not in the consideration of [valid sentencing] factors; it [was] in the weight that the district court placed on [these factors]."); *cf. Fernandez*, 443 F.3d at 34–35 (stating that "we will not second guess the weight (or lack thereof) that the judge accorded to a given factor ... [under § 3553(a)], *as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented* " (emphasis added)).[5]

The sentence imposed by the district court " 'exceeded the bounds of allowable discretion.' " *Fernandez*, 443 F.3d at 27 (quoting *Crosby*, 397 F.3d at 114). The court's failure to impose a term of imprisonment was unreasonable. Accordingly, we vacate and remand for resentencing.

## II. The Failure to Include a Statement of Reasons in the Written Judgment.

The Supreme Court's decision in *Booker* "left unimpaired section 3553(c)." *Crosby,*

---

**5.** After this case was argued, we issued an opinion in *Fairclough*, in which we upheld a non-Guidelines sentence that amounted to nearly twice the high-end of the recommended Guidelines range. *United States v. Fairclough*, 439 F.3d 76 (2d Cir.2006) (per curiam). *Fairclough* does not stand for the proposition that a fifty-percent deviation from the high- or low-end of the Guidelines range is inherently reasonable. That view of *Fairclough*, and of reasonableness review generally, would be far too simplistic. In *Fairclough*, we relied upon three bases for upholding the substantial deviation from the Guidelines

range as reasonable: (1) the district court stated the specific reason why a Guidelines sentence would not properly reflect one of the § 3553(a) factors, *id.* at 80 (stating that the district court "felt that the Guidelines range was inadequate to address the 'nature and circumstances' of the offense"); (2) the district court's sentence reflected consideration of the balance of the § 3553(a) factors, *id.* at 80–81; and (3) the district court's deviation from the Guidelines range might have been sustained by its departure authority, *id.* at 81. None of those bases is present here.

397 F.3d at 116. That provision provides, in pertinent part:

The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

(1) is of the kind, and within the range, described in subsection (a)(4) [*i.e.*, a Guidelines sentence] and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment. . . .

18 U.S.C. § 3553(c).

It is inescapable that § 3553(c)(2) imposes a statutory obligation on the district court to state, in open court, "the specific reason for the imposition of a sentence different from" the advisory Guidelines sentence, should it elect to impose a sentence outside the applicable Guidelines range. *See id.* Under the statute, the district court also must set forth its reasons "with specificity in the written order of judgment and commitment." *Id.* We reiterate that these obligations are binding on the district courts.[6]

Section 3553(c) distinguishes between the obligations for a sentence within and without the advisory Guidelines range. Whereas § 3553(c)(1) only requires that the district court state, in open court, the reason for the sentence imposed at the particular point within the advisory Guide-lines range, § 3553(c)(2) goes further; it requires that the district court both (1) state in open court the "specific" reason for the imposition of a sentence "different from" the advisory Guidelines sentence and (2) state the reasons for that sentence "with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2); *see also United States v. Miqbel,* 444 F.3d 1173, 1179 (9th Cir.2006) (explaining that the legislative history behind § 3553(c) "differentiates between the requirements for sentences that are inside the guideline range and sentences that are outside that range" (citing S.Rep. No. 98–225, *reprinted in* 1984 U.S.C.C.A.N. at 3262)). Because we are hesitant to require the district court to utter any specific incantation, a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a) should suffice. *Cf. Fairclough,* 439 F.3d at 80 (noting that "[t]he District Court felt that the Guidelines range was inadequate to address the 'nature and circumstances' of the offense"); *see also Miqbel,* 444 F.3d at 1179 (stating that the district court was required to explain both "the specific reasons why a [sentence within the Guidelines range] would not be sufficient *and* why [the sentence imposed, which fell outside the range,] was appropriate").

While the fact that § 3553(c) imposes obligations on the district court is plain, it is an open question in this circuit whether the failure to abide by § 3553(c) provides an independent cause for remand where the district court imposed a *non-Guidelines sentence* outside the advisory Guidelines range. *Cf. United States v. Fuller,* 426 F.3d 556, 567 (2d Cir.2005) (holding

---

6. Although the district court's order of restitution has not been challenged on this appeal, we also note that § 3553(c) provides that "[i]f the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor." 18 U.S.C. § 3553(c).

that, in a *departure case* within the structure of the Guidelines, the failure to abide by § 3553(c) did not provide an independent cause for remand). Because we find that Rattoballi's sentence is unreasonable and therefore provides an adequate cause for remand, 18 U.S.C. § 3742(f)(1) (requiring remand where a sentence is "imposed in violation of law"); *cf. Fernandez,* 443 F.3d at 25–26 (holding that we have jurisdiction to review a properly calculated Guidelines sentence for unreasonableness under § 3742(a)(1) because the defendant is effectively claiming that the sentence was " 'imposed in violation of law' "), we need not decide today whether remand is also compelled by the district court's non-compliance with the written judgment requirements of § 3553(c)(2).

### III. The District Court's Finding of an Inability to Pay a Fine and its Failure to Impose a Fine.

■ Because *Booker* rendered the whole of the Guidelines advisory, it stands to reason that the Guidelines' fine requirements were likewise rendered advisory. *Booker,* 543 U.S. at 245, 125 S.Ct. 738 (excising 18 U.S.C. § 3553(b)(1)). In the absence of the mandatory Guidelines scheme, the Sentencing Reform Act leaves to the discretion of the district court the question whether to impose a fine. *See* 18 U.S.C. § 3571(a) ("A defendant who has been found guilty of an offense *may* be sentenced to pay a fine." (emphasis added)). Accordingly, a district court is not under an obligation to impose a fine post-*Booker,* except where the failure to do so would offend the underlying criminal statute or amount to an abuse of discretion.

■ Even though the decision whether to impose a punitive fine, like the decision whether to impose a particular term of imprisonment, lies within the discretion of the district court, that does not mean that a district court can simply ignore a Guidelines recommendation calling for the imposition of a fine. To the contrary, a district court must engage in the same type of analysis it applies in determining the appropriate term of imprisonment: After consulting the Guidelines recommendation, the district court should consider the § 3553(a) factors, including any pertinent policy statement issued by the Commission; it should then consult the standards outlined in 18 U.S.C. §§ 3571 and 3572 to determine whether the imposition of a fine is appropriate.[7]

7. Subsection (a) of 18 U.S.C. § 3572 provides: In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)—
(1) the defendant's income, earning capacity, and financial resources;
(2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
(3) any pecuniary loss inflicted upon others as a result of the offense;
(4) whether restitution is ordered or made and the amount of such restitution;
(5) the need to deprive the defendant of illegally obtained gains from the offense;
(6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;
(7) whether the defendant can pass on to consumers or other persons the expense of the fine; and
(8) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

 In this case, the district court never mentioned the imposition of a fine during the sentencing hearing and, with the record devoid of any suggestion of consideration, it appears to have ignored the Guidelines recommendation of a $20,000 minimum fine. Following the hearing, the district court decided not to impose a fine, citing Rattoballi's inability to pay. We hold that this finding is clearly erroneous in light of the defendant's admission (that he had "accumulated some modest wealth" and was "capable of paying a modest fine") and his considerable assets (between $1 and $1.5 million). Thus, it is not necessary for us to decide today the standard by which we review a district court's considered decision to impose or not impose a fine.

On remand, the district court must consider whether the imposition of a fine would further the goals reflected in the § 3553(a) factors and the standards outlined in §§ 3571 and 3572. We note that the Commission has expressed the belief that "[s]ubstantial fines are an essential part of the sentence" for antitrust offenders. U.S.S.G. § 2R1.1, cmt. background. It also has stated that "[i]f the court concludes that the defendant lacks the ability to pay the guideline fine, it should impose community service in lieu of a portion of the fine." *Id.* § 2R1.1, cmt. n. 2. The district court must consider these and any other pertinent policy statements on remand.[8]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED as to the sentence and the case is REMANDED for resentencing consistent with this opinion.

---

8. We recognize that the pre-sentence report recommended that "the fine in this case be waived in lieu of the recommended order of restitution." The Probation Office based this recommendation on a restitution order in excess of $396,000; the district court ordered that the defendant pay $155,000 in restitution. On remand, the district court should consider the amount of restitution actually imposed in determining the propriety of a fine. *See* 18 U.S.C. § 3572(a)(4), (b).