**UNITED STATES of America,**
**Appellant,**

v.

**Barry TRUPIN, Defendant–Appellee.**

Docket No. 05–2934–cr.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 11, 2006.

Decided: Jan. 23, 2007.

Lynn A. Neils, Assistant United States Attorney, (Michael J. Garcia, United States Attorney for the Southern District of New York, Stephen J. Ritchin, Assistant United States Attorney, Celeste L. Koeleveld, Assistant United States Attorney; on the brief) New York, NY, for Appellant.

Dayna Ferebee, Law Office of Dayna Ferebee, New York, NY, for Defendant–Appellee.

Before WESLEY, HALL, Circuit Judges, and JONES, District Judge.*

WESLEY, Circuit Judge.

This appeal concerns the bounds of "reasonableness" after *United States v. Booker*, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In particular, we must determine whether it was reasonable for the district court to prescribe a seven-month prison term—amounting to an eighty percent reduction from the bottom of the applicable Sentencing Guidelines range—for a defendant who engaged in a multi-year, multi-million dollar tax evasion scheme. We hold that the district court's decision was unreasonable; it failed to properly weigh all of the sentencing factors enumerated in 18 U.S.C. § 3553(a) and the record does not adequately support those factors on which the district court relied.

Defendant Barry Trupin's federal criminal prosecution for tax evasion returns to us for a second time. On the first occasion Trupin appealed his conviction, but not his sentence, for one count of attempting to evade the payment of income taxes, 26 U.S.C. § 7201, and one count of making false statements to the Internal Revenue Service, 18 U.S.C. § 1001. We affirmed Trupin's conviction in a summary order on January 5, 2005. *United States v. Trupin*, 119 Fed.Appx. 323, 2005 WL 18009 (2d Cir.2005). As was the practice with all criminal cases following *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), we withheld issuance of the mandate in anticipation of *Booker*.

Just seven days after our summary order, the Supreme Court announced its ruling in *Booker*. Second Circuit practice at the time gave Trupin fourteen days from the date of *Booker* to file supplemental briefing pertaining to his sentence. To stem the tide of confusion in the days following *Booker*, we elected to stay this fourteen-day period until we decided how to handle sentencing cases in the post-*Booker* world. That decision came in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). Thereafter Trupin was notified that a "*Crosby* remand"—returning his case to the district court for resentencing in light of *Booker* and *Crosby*—would issue if requested. Trupin's counsel requested and received the remand.

We need not revisit the entire factual background of Trupin's crimes except to note that he employed a number of devices to avoid reporting over six million dollars in income over a period of six years. Trupin enlisted the aid of family members to claim ownership of certain assets, created phony paper trails, employed shell corporations and trusts, and shipped expensive assets to the Vancouver Islands in Canada.

At the first sentencing proceeding, the district court (McKenna, *J.*) calculated Trupin's offense level category at 21 under the Guidelines, based on its tax loss calculation [1] and a two-level enhancement for the sophisticated means of Trupin's deception. The Guidelines also set him at a

---

* The Honorable Barbara S. Jones, District Judge, United States District Court for the Southern District of New York, sitting by designation.

1. The amount of the tax loss appears to have been a point of contention and confusion throughout sentencing. While setting the tax loss at $1.2 million at the first sentencing hearing, the district court seemed to suggest a greater tax loss at resentencing, when "doubt[ing] if the amount of money actually lost by the government was anything like 5 or 6 million, because by the time you get into fighting with other creditors and the validity of the IRS to try to settle things to collect money, I think it might have been a lot, lot less." Because it does not affect our result, we will assume for purposes of this appeal that the tax loss suffered was $1.2 million.

Criminal History Category of II for his earlier conviction for possession of a stolen Marc Chagall painting. *See United States v. Trupin*, 117 F.3d 678 (2d Cir.1997). An offense level of 21 coupled with a Criminal History Category of II resulted in a Guidelines range of 41 to 51 months of imprisonment.

At the original sentencing proceeding, the district court denied Trupin's request for a downward departure based on extraordinary family circumstances and his advanced age. The district court found that Trupin neither established that his wife's health required his presence nor that his "age, in light of his general good health," warranted a departure. When offered a chance to speak on his own behalf at the hearing, Trupin asserted his innocence: "I sit here, stand here in amazement because I am not aware that I committed any crime." The district court expressed its dismay at the length of prison time it was required to impose under the Guidelines:

> I am going to sentence at the lowest available sentencing range in this case. I don't want to spend half an hour complaining about the [G]uidelines, but this [G]uideline is one of the worst I have ever seen.

Trupin received the minimum Guidelines sentence of 41 months of incarceration, followed by three years of supervised release, and a mandatory $150 special assessment.

On remand, the district court treated the Guidelines as advisory and made no change to its original Guidelines range calculation, but found the section 3553(a) factors militated in favor of a significantly reduced sentence. The district court first focused on the condition of Trupin's wife: "[F]rom everything I can see, Mr. Trupin does everything in his power to take good care of [his wife], even though [Trupin] doesn't have the means that he once had." The district court acknowledged that Trupin's crimes amounted to a "serious case," but thought that "a few weeks in jail for most of us would be a very, very significant punishment." The district court noted general statistics indicating that "recidivism declines consistently as age increases," leading it to conclude that "Trupin is [not] going to go out and commit any more crimes of the sort he's done." The court also expressed doubt as to whether the IRS could collect from Trupin since a number of creditors would be going after Trupin's few remaining assets. The district court ultimately decided that Trupin deserved a sentence of seven months of imprisonment, seven months of home confinement, and three years of supervised release.[2] Trupin is currently serving his sentence.

**2.** Following the sentencing hearing, the district court entered a written judgment detailing the reasons for its sentencing decision:

> Defendant is over 69 years old, and service of a lengthy sentence will be a greater hardship on him than in most cases. Sentencing Commission studies have found that recidivism decreases consistently with age. Defendant's wife is sick without financial means or medical insurance or other persons to take care of her.
> Defendant currently lives on social security, but may be able to earn sufficient money after a short sentence to repay at least some

of what he owes to the Internal Revenue Service (IRS). A sentence of seven (7) months of incarceration and seven (7) months home confinement is reasonable, and no greater sentence is necessary to satisfy purposes of 18 U.S.C. § 3553(a)(2). It is not clear to what extent the district court intended these reasons to supplement or further explain its oral statements on the record. To the extent that the reasons in the written judgment purport to explain considerations stated on the record, they do not cure the unreasonableness of the sentence imposed for the reasons explained below.

On appeal, the Government argues the district court's decision to impose a seven-month term of imprisonment—34 months below the bottom of the applicable Guidelines range—is unreasonable. The Government contends the district court erred by placing undue weight on Trupin's age and family ties, while giving short shrift to the other 3553(a) factors, including the seriousness of the offense, the need to promote respect for the law, the need to provide deterrence, and the suggested Guidelines range. Trupin responds that the sentence was reasonable: The district court properly considered the section 3553(a) factors, committed no error in its calculation of the advisory Guidelines range, determined that a Guidelines sentences was not appropriate, and exercised its discretion to impose a reduced non-Guidelines sentence.

Reasonableness has a procedural and substantive component. *Crosby*, 397 F.3d at 114–15. A sentencing court must (1) treat the Guidelines as advisory, (2) calculate the Guidelines range based on its factual findings, and (3) consider the section 3553(a) factors.[3] *Id.* at 113–115. The ulti-mate sentence must be reasonable in light of all the section 3553(a) factors.[4] *Id.*

Neither the way in which the district court performed its duty to consider the section 3553(a) factors nor its Guidelines calculation is at issue. "As long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance, we will accept that the requisite consideration has occurred." *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir.2005). Although the district court considered the section 3553(a) factors as required by *Booker*, it erred in its conclusion. This case thus turns on the result—the reasonableness of the sentence as a whole—rather than the process that produced it.

To date, our review of sentences for reasonableness has been measured. We have held sentences to be unreasonable when unjustified reliance is placed on one section 3553(a) factor, *United States v. Rattoballi*, 452 F.3d 127, 137 (2d Cir.2006),

**3.** Section 3553(a) requires a district court to "impose a sentence, sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" and to "consider" the following factors "in determining the particular sentence to be imposed":
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . . .
(5) any pertinent policy statement—
(A) issued by the Sentencing Commission. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

**4.** We review a district court's sentence for reasonableness *de novo* and evaluate its findings of fact for clear error. *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir.2005).

when a sentence reflects general policy disagreement with the Guidelines, *see id.* at 135, or when a sentence is based on a consideration not included in section 3553(a), *United States v. Godding,* 405 F.3d 125, 126 (2d Cir.2005). This case sits at the junction of all three. Here, the district court placed unjustified reliance on Trupin's age and family circumstances. Moreover, to the extent that the district court gave undue weight to considerations not unique to the defendant, relied upon an improper factor, or substituted personal views for the Commission's policies, that too was error.

At the original sentencing proceeding, the district court held Trupin's age and family circumstances were not sufficiently extraordinary to warrant a downward departure under the Guidelines. At no time during resentencing did the district court reconsider its denial of a departure. Instead, the district court noted that Trupin's "age and family ties and responsibilities are now normally relevant" at sentencing, ostensibly because section 3553(a)(1) requires consideration of "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). The Government does not argue that the district court's decision to not grant a departure for age and family circumstances prohibits any consideration of those same facts under section 3553(a)(1).[5] Rather, the Government argues the district court placed far too much weight on Trupin's

family circumstances and age without giving adequate weight to the other statutory factors. We agree.

The district court's concern for the condition of Trupin's wife is "neither sufficiently compelling nor present to the degree necessary to support the sentence imposed." *Rattoballi,* 452 F.3d at 137. The district court emphasized Trupin's professed need to care for his wife: "Mr. Trupin does everything in his power to take good care of her, even though he doesn't have the means he once had." Yet the record does not demonstrate that Trupin's presence was essential to his wife's well-being; indeed, the district court had found otherwise at Trupin's first sentencing hearing. Trupin was separated from his wife when he served time in federal prison in 1998. They also lived apart for significant periods of time in 1999, 2000, and 2001, when Trupin could not leave the United States and his wife was living in Canada. Moreover, the separation of Trupin from his wife caused by incarceration is not sufficiently unique to Trupin, but rather is true of every married defendant who runs afoul of the law and is then separated from his family. While tragic, it is a tragedy of Trupin's making.

In reducing Trupin's sentence, the district court also placed too much weight on Trupin's advanced age, either as a mitigating personal characteristic or a factor relevant to deterrence. The record shows that Trupin was 69 years old and in good

---

**5.** Section 3553(a)(1) requires consideration of the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Section 3553(a)(5), on the other hand, requires consideration of "any pertinent policy statement," 18 U.S.C. § 3553(a)(5), one of which states that "family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines," United States Sentencing Guidelines Manual § 5H1.6. These two provisions seemingly exist in tension. *Compare Ratto-*

*balli,* 452 F.3d at 136 n. 4; *United States v. Jackson,* 408 F.3d 301, 305 n. 3 (6th Cir.2005) *with United States v. Wallace,* 458 F.3d 606, 613 (7th Cir.2006); *United States v. Ameline,* 409 F.3d 1073, 1093 (9th Cir.2005) (Wardlaw, J., concurring in part and dissenting in part) (en banc). Because the parties did not address this issue and because it is not necessary to this decision, we assume without deciding that Trupin's age and family needs are proper considerations under section 3553(a)(1).

health; and while the district court cited statistics that recidivism generally declines with age, Trupin has proven himself to be an exception to the rule. Trupin began his questionable escapades at the age of 54 with the receipt of a stolen painting, continued with an intricate multi-million dollar tax evasion scheme, and ended with a bad faith bankruptcy filing in his late sixties. At sentencing, Trupin continued to press his continued belief in his innocence and even refused to complete a financial affidavit in connection with his Pre–Sentence Report. Aging clearly has not increased Trupin's respect for the law.

Nor does the sentence reflect the seriousness of Trupin's offense. *See* 18 U.S.C. § 3553(a)(2)(A). The tax fraud occurred over six years and accounted for over six million dollars in unreported income. Trupin accomplished his tax evasion through a complex network of corporate shells, phony paper trails, and foreign transactions—efforts that required him to take advantage of his wife and daughter. Moreover, to the extent that the district court considered whether and to what extent the IRS would be able to collect the unpaid taxes, this is an irrelevant variable to include in the sentencing calculus. Vague notions of how much the IRS will actually collect from Trupin should have played no part in assessing the seriousness of the offense or in otherwise crafting the sentence. What is determinative is the amount Trupin in effect stole from his fellow taxpayers through his deceptions.[6] A seven-month term of imprisonment fails to reflect as much.

We end with a note on the district court's generalized objections to imprisonment and the Guidelines in particular. During the initial sentencing hearing, the district court opined that "this [G]uideline is one of the worst I have ever seen." And at resentencing the court indicated that "a few weeks in jail for most of us would be a very, very significant punishment." We have rejected general policy disagreements such as these on two occasions. *See United States v. Castillo*, 460 F.3d 337, 361 (2d Cir.2006); *Rattoballi*, 452 F.3d at 127. Sentencing policy is for Congress and the Sentencing Commission, not judges. In the federal sentencing scheme, judges have a limited but important role: tailor a sentence based on defendant-specific considerations. The failure to do so renders a sentence unreasonable.

We are mindful of the difficult duty sentencing courts encounter post-*Booker*, a duty that is made all the more difficult when a defendant marshals sympathetic facts. In such a case, the sentence must still account for all of the section 3553(a) factors, be fashioned to the individual defendant, and not be based on generalized policy grievances or disagreements.

The case is REMANDED for further proceedings consistent with this opinion.

---

**6.** Only a limited number of criminal tax prosecutions are brought relative to the number of alleged violations. *See* U.S. SENTENCING GUIDELINES MANUAL ch. 2, pt. T, introductory cmt. Deterrence is clearly a primary goal in sentencing a tax evader, *see* 18 U.S.C. § 3553(a)(2)(B), a result not served by shortening a sentence based on the IRS's perceived inability to collect.