15-3944
*United States v. Garcia*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007 is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 15th day of December, two thousand sixteen.

Present:    ROBERT A. KATZMANN,
                           *Chief Judge*,
               RALPH K. WINTER,
                           *Circuit Judge,*
               SIDNEY H. STEIN
                           *District Judge*.[*]

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

          v.                                                      No. 15-3944

JUAN E. GARCIA AKA Cruzito, Juan E. Garcia

                    *Defendant-Appellant.*

_____

For Appellee:                    JOHN J. DURHAM, Assistant United States Attorney (Jo Ann M. Navickas and Raymond A. Tierney, Assistant United States Attorneys, *on the brief*), *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant:    BARRY GENE RHODES, New York, NY.

_____

[*] Judge Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the Eastern District of New York (Bianco, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Juan E. Garcia appeals from a judgment of the United States District Court for the Eastern District of New York (Bianco, *J.*) sentencing him principally to life imprisonment for one count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

In early 2010, Garcia, a 17-year-old member of the gang La Mara Salvatrucha ("MS-13"), was dating Vanessa Argueta, a 19-year-old with ties to two of MS-13's rival gangs. On two occasions after Garcia fought with Argueta, rival gang members went to Garcia's house looking to attack him. After the second incident, Garcia explained to fellow MS-13 members that he had been targeted by rival gang members as a result of information he believed Argueta had provided. Garcia and other gang members agreed that they needed to retaliate against Argueta, so they requested and received permission from their leader to murder her. In February 2010, Garcia told Argueta that he wanted to take her out for dinner. When Garcia picked Argueta up that evening, she brought along her 2-year-old son. Garcia then picked up two fellow MS-13 members and a .22 caliber semi-automatic handgun. Garcia drove to an isolated area and lured Argueta and her son into the woods. One gang member shot Argueta in the head, and Garcia shot her in the chest. The third gang member then shot Argueta's 2-year-old son. Both Argueta and her son died as a result of their injuries.

After the murders of Argueta and her son, Garcia fled to Texas, then to El Salvador, and finally to Nicaragua where he remained for approximately four years. In March 2014, Garcia was added to the FBI's Most Wanted List and subsequently surrendered to Nicaraguan law enforcement authorities. He pleaded guilty to one count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) on October 15, 2014.

Garcia was sentenced on November 23, 2015. At the proceeding, the district court observed that treating the life sentence required by 18 U.S.C. § 1959(a)(1) as mandatory for Garcia would be unconstitutional under *Miller v. Alabama*, 132 S. Ct. 2455 (2012), as Garcia was 17 at the time of the offense. The district court nevertheless announced its intent to impose a discretionary life sentence in light of the factors set forth in 18 U.S.C. § 3553(a), the advisory Guidelines range of life imprisonment, and the factors articulated by the Supreme Court in *Miller* as relevant to imposing a life sentence on a juvenile. Before articulating specific reasons for the sentence, the district court stated:

> I have given this sentence a lot of thought. All sentencings are difficult. This is a particularly difficult sentence to determine. . . . [Defense counsel] did point out a number of mitigating factors that I did consider. But I believe, in my discretion, a life sentence is still warranted in this case.

App. 135–36. It then went on to explain its decision.

First, the district court focused on "the nature and circumstances of this offense" as a "brutal execution style murder" of Argueta and her son. App. 136. The district court observed that Garcia initiated the events in question by bringing his suspicions about Argueta to MS-13. As the district court explained, Garcia "was a member of the gang. He knew what the gang was about. He knew what response the gang would have to such a situation, yet he made the decision to bring it to the gang." App. 136. The district court then noted that Garcia was "alone" when he picked up Argueta and her son and that he "could have called off that shooting." App. 137.

3

Finally, the district court emphasized that Garcia shot Argueta in the chest and then gave the gun to the person who shot Argueta's son. Based on these factors, the district court found that "a life sentence is necessary to reflect the seriousness of the murders" and to "provide a just sentence for the loss of two lives in a single act." App. 137.

The district court then discussed deterrence, observing that:

> These murders were part of the violent activities of the MS-13 gangs. They present a clear and present danger to society. Unfortunately, many of the gang members are young and are committing murders at the age of 17 . . . . I believe that the gang, generally, as well as its young members, need to understand that when they commit murders . . . they will be met with the most severe punishment. I believe that it does have a deterrent effect on behavior, even for 17 year olds.

App. 137–38.

Next, the district court discussed various mitigating factors put forward by Garcia. It noted that Garcia only surrendered after being placed on the FBI's Most Wanted list. The district court found Garcia's acceptance of responsibility and remorse to be genuine, and noted his young age, but stated that it "just believe[d] that these mitigating factors do not outweigh the other factors that . . . overwhelmingly weigh in favor of a life sentence." App. 139.

The district court then discussed the Supreme Court's *Miller* decision. First, the district court noted that Garcia was 17 at the time of the offense, rather than a younger teenager. It observed that Garcia had displayed maturity both before the crime, by coming to the United States alone at the age of the 14, and after the crime, by successfully fleeing to Texas, El Salvador, and eventually Nicaragua, where he lived for four years. The district court also noted that Garcia had a supportive family in the United States.

The district court also discussed the lack of "impetuosity" of Garcia's crime. The district court noted:

4

> [T]his is very important, and the government emphasized this as well, this was not a spontaneous act. This was not a spur of the moment bad judgment by a juvenile, some impulsive situation. This was a planned and premeditated execution. The defendant had a lot of time to think about it. There were several steps that he took to make it happen.

App. 140. The district court also emphasized that this crime was not the result of peer pressure, noting:

> [T]his is not a situation where [Garcia] was in a car and a gang leader said to him you have to commit this murder if you want to be one of us . . . . [Garcia] brought a dispute to them that had nothing to do with the gang itself. The gang wasn't aware of the situation at his house. MS-13 had nothing to do with it. He made the decision to bring this dispute to the gang. There was no pressure for him to do that from the MS-13 gang.

App. 141. Finally, the district court reiterated that it did not think anyone was beyond rehabilitation and that it found Garcia's remorse genuine. However, the district court found that "all of the other factors, especially the heinous nature of this crime and the harm done to the victims . . . and the need for deterrents [sic] . . . outweigh this factor as well." App. 142.

On appeal, Garcia argues that the district court's imposition of a life sentence was substantively unreasonable in light of his age and potential for rehabilitation. This Court will set aside a sentence as substantively unreasonable "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). While "*unjustified* reliance upon any one factor" might render a sentence substantively unreasonable, "if the ultimate sentence is reasonable and the sentencing judge did not commit procedural error in imposing that sentence, we will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." *United States v. Pope*, 554 F.3d 240, 246-47 (2d Cir. 2009) (first quoting *United States v.*

*Rattoballi*, 452 F.3d 127, 137 (2d Cir. 2006); then quoting *United States v. Fernandez*, 443 F.3d 19, 34 (2d Cir. 2006)) (alterations and internal quotation marks omitted). Although mandatory life sentences may not be imposed on juvenile offenders, *see Miller v. Alabama*,132 S. Ct. 2455, 2469 (2012), discretionary life sentences are permitted if the court adequately considers the appropriate factors with respect to the particular juvenile defendant before it, *see id*. *Miller* listed four factors in particular to consider: (1) "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment" of the defendant; (3) "the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected him"; and (4) "the possibility of rehabilitation." *Id*. at 2468. These factors are intended to ensure that courts do not "sentence a child whose crime reflects transient immaturity to life without parole." *Montgomery v. Louisiana*, 136 S. Ct. 718, 735 (2016). Under this framework, "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Miller*, 132 S. Ct. at 2469.

Garcia argues that a sentence of 30 years' imprisonment or some other term of years would be more appropriate than the imposed life sentence. However, Garcia does not point to any factor that the district court overlooked or "any one factor" on which the district court unjustifiably relied. *Pope*, 554 F.3d at 246 (quoting *Rattoballi*, 452 F.3d at 137). Instead, Garcia argues that the district court should have given more weight to his youth and potential for rehabilitation. The district court recognized that these were mitigating factors and discussed them extensively in light of *Miller*, but ultimately found that they were outweighed by other *Miller* and § 3553(a) factors. Although "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," *Miller*, 132 S. Ct. at 2469, we cannot say, given the district

6

court's findings, that the district court's decision to sentence Garcia to a life sentence "cannot be located within the range of permissible decisions," *Cavera*, 550 F.3d at 189 (quoting *Rigas*, 490 F.3d at 238).The district court carefully conducted the analysis required under *Miller* and we will not disturb its judgment.[2]

We have considered all of Garcia's arguments and find them to be without merit. For the reasons given, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] Garcia does not argue that *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) compels a different result.