**UNITED STATES of America,
Appellee,**

v.

**Felix SINDIMA, Defendant–Appellant.**

**Docket No. 06–2245–cr.**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 15, 2006.

Decided: March 5, 2007.

Marybeth Covert, Federal Public Defender's Office, Buffalo, NY, for Defendant–Appellant.

Stephan Baczynski, Assistant United States Attorney for the Western District of New York (Terrance P. Flynn, United States Attorney, Joseph J. Karaszewski, Assistant United States Attorney, of counsel), Buffalo, NY, for Appellee.

Before SACK, KATZMANN, and B.D. PARKER, Circuit Judges.

SACK, Circuit Judge.

Following a guilty plea on federal mail fraud charges, the United States District Court for the Western District of New York (Richard J. Arcara, *Chief Judge*) imposed upon the defendant, Felix Sindima, a sentence under the United States Sentencing Guidelines (the "Guidelines") of, principally, three years' probation. The terms of probation included a prohibition against Sindima's commission of any further crime. Thereafter, while still on probation, Sindima was charged with two violations of that prohibition. The district court found Sindima guilty of both. On April 13, 2006, the court imposed a sentence of thirty-six months' imprisonment, twenty-six months above the high end of the advisory Guidelines range. Sindima appeals, asserting that the sentence is substantively unreasonable.

We conclude that under the circumstances presented, the district court's statement of reasons for the length of the sentence is inadequate to assure us that those reasons are "sufficiently compelling [and] present to the degree necessary to support the sentence imposed." *United States v. Rattoballi*, 452 F.3d 127, 137 (2d Cir.2006). Accordingly, we remand.

## BACKGROUND

On December 9, 2002, Sindima pleaded guilty to one count of mail fraud arising out of a scheme in which he caused two computer retailers to send computer equipment to him using the names and social security numbers of others. On May 15, 2003, the district court sentenced Sindima within his Guidelines range of zero-to-six months by imposing three years' probation and restitution in the amount of $9,356.88. The provisions of Sindima's probation included the standard condition that he not commit another crime while on probation.

On August 10, 2005, while Sindima remained on probation, the government filed a petition alleging two violations of that condition—crimes he had allegedly committed and for which he had been arrested by the Buffalo Police Department.[1] On September 21, 2005, the district court conducted an evidentiary hearing. Thereafter, on December 29, 2005, the court found Sindima guilty of both charges.

---

1. The state charges against Sindima were eventually dismissed.

The evidence presented at the hearing indicated that on or about April 26, 2005, almost two years after his mail fraud sentence, Sindima opened a series of bank accounts in the name of "FS Computers." The first was with Bank of America, where he deposited $3,200 with two checks that were eventually returned for insufficient funds. Prior to the checks being returned, Sindima withdrew $3,400 from the Bank of America account, $3,000 of which he used to establish a similar account at Evans National Bank. On June 13, 2005, after this $3,000 check and another check for $760 were returned for insufficient funds, Evans National Bank informed Sindima that his account had been suspended. Undaunted, Sindima deposited another check, but it was also returned for insufficient funds. On June 24, 2005, he then wrote a $3,700 check drawn on his still-suspended Evans account which he used to open a third account at the Greater Buffalo Savings Bank. In accordance with its policy, however, the bank placed an automatic nine-day hold on the newly opened account. This check was subsequently returned for insufficient funds, along with another check from a bank account in his wife's name, which Sindima had also sought to deposit. Sindima was eventually arrested following an attempt to withdraw $200 from and deposit $11 to the Greater Buffalo Savings Bank account.

On January 23, 2006, the district court held an initial sentencing hearing, at which time it evidently accepted the Probation Office's calculation that Sindima's violations were "Grade B"[2] and his criminal history category was I, for which the Guidelines prescribe an advisory range of four-to-ten months.[3] The court gave the government and Sindima notice, however, that it was considering a non-Guidelines sentence of sixty months, the statutory maximum. We were informed at oral argument that no transcript of this hearing was prepared, and there is therefore nothing in the record before us indicating whether the district court stated reasons for considering the statutory maximum penalty, or if so, what they were. In any event, following adjournment of the sentencing hearing, defense counsel submitted additional letters from various persons attesting to Sindima's good character and a supplemental memorandum urging leniency.

On April 13, 2006, the district court sentenced Sindima for violation of probation. Although defense counsel and the government had "urge[d]" the district court to impose a Guidelines sentence, Tr., Apr. 13, 2006, at 14, 15, the court sentenced Sindi-

---

**2.** A Grade B violation is defined as "conduct constituting [a] ... federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 7B1.1(a)(2). A Grade B violation is the middle tier of a three-tiered scheme for punishment of probation violations. Grade A violations are those crimes involving violence, controlled substances, or firearms, or those punishable by more than twenty years in prison. Grade C violations are crimes punishable by one year of imprisonment or less or the violation of any other probation condition. *Id.* §§ 7B1.1(a)(1), (3).

**3.** The Guidelines here at issue are ranges derived from "advisory policy statements" with respect to probation violations. *See* U.S.S.G. §§ 7B1.1–7B1.5. These policy statements provide various "Guidelines ranges" based upon the grade of probation violation and the violator's criminal history. *Id.* § 7B1.4. Sentences imposed thereunder were advisory even prior to *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See United States v. Goffi,* 446 F.3d 319, 322 (2d Cir.2006). Following *Booker,* the standard of review of sentences issued under the formerly mandatory Guidelines and the long-advisory probation policy statements is the same. *See United States v. Lewis,* 424 F.3d 239, 243 (2d Cir.2005).

ma to, principally, thirty-six months in prison, more than three-and-one-half times the ten-month high-end of the advisory Guidelines range.[4] After expressing its view that Sindima was "a danger to the community," *id.* at 10, the district court explained the reasons for its sentence. First, the court indicated that it sentenced Sindima to

a term of imprisonment above the recommended [G]uideline[s] range because of what I consider egregious conduct while on probation. Despite being given a substantial break by this Court by being sentenced to probation, [Sindima] went out and committed numerous additional acts of ... fraud. He, obviously, did not learn his lesson while on probation. He's exhibited complete disregard for the rules of law.

It is clear this sentence ... was necessary to address the extent of the criminal behavior and to deter the defendant from future acts of fraud. This is not a situation where the defendant has made an isolated bad judgment call while on probation. Instead, he engaged in a calculated pattern of fraudulent activity on a repeated basis in complete disregard of the terms of his probation.

Tr., Apr. 13, 2006, at 17.

Second, however, the district court was persuaded in some respects by the mitigating factors presented by defense counsel— that Sindima provided financial and emotional support to five children, that he had continued his college studies while on probation, and that he had volunteered in a center for the elderly and in his church. *Id.* at 6–7; *see also* Def's. Second Sent'g Mem. These factors "were considered and [were] the reason why" Sindima received a "lesser sentence" than the five-year statutory maximum. Tr., Apr. 13, 2006, at 17.[5]

The district court did not record its reasons for the sentence in its written judgment.

## DISCUSSION

### I.  Standard of Review

■   We review sentences for reasonableness, *United States v. Booker*, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which has both substantive and procedural dimensions, *see United States v. Crosby*, 397 F.3d 103, 114 (2d Cir.2005). In the substantive dimension in which this appeal is raised, we determine "whether the length of the sentence is reasonable," *Rattoballi*, 452 F.3d at 132, focusing our attention on the district court's explanation of its sentence in light of the factors detailed in 18 U.S.C. § 3553(a),[6] *see id.* at

---

**4.**  Sindima was also sentenced to three years' supervised release and ordered to pay restitution. He does not appeal these aspects of his sentence.

**5.**  During the sentencing colloquy, the district court devoted much of its attention to Sindima's relationship with his church, which the court seemed to regard as inconsistent with his protestations of sincerity and remorse. For example, the court remarked:

[W]hen you go to church and you share the services and your religion with other people ... everybody in that church ... kind of bonds together.... Unless, maybe, someone isn't quite sincere.... I think that's

very unfortunate that you go to church, being very outwardly,[sic] appears to be very sincere, very religious, and will follow all the precepts of the religion, and I am sure—I'm not sure what all the religious beliefs are, but I'm sure it doesn't say you can defraud banks.

Tr., Apr. 13, 2006, at 11.

**6.**  Section 3553(a) provides, in pertinent part:

The court shall impose a sentence *sufficient, but not greater than necessary,* to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

134–35.[7]

Reasonableness review "is akin to review for abuse of discretion." *United States v. Fernandez,* 443 F.3d 19, 27 (2d Cir.), *cert. denied,* — U.S. ——, 127 S.Ct. 192, 166 L.Ed.2d 143 (2006). A district court abuses its discretion when its decision "cannot be located within the range of permissible decisions" or is based either on an error of law or a clearly erroneous factual finding. *United States v. Fuller,* 426 F.3d 556, 562 (2d Cir.2005) (citations and internal quotation marks omitted). We have observed that " 'reasonableness' is inherently a concept of flexible meaning, generally lacking precise boundaries," *Crosby,* 397 F.3d at 115; that it involves "some degree of subjectivity that often cannot be precisely explained," *United States v. Jones,* 460 F.3d 191, 195 (2d Cir.2006); and that our function in reviewing sentences is to "exhibit restraint, not micromanagement," *United States v. Fleming,* 397 F.3d 95, 100 (2d Cir.2005). Accordingly, "[a]lthough the brevity or length of a sentence can exceed the bounds of 'reasonableness,' we [have] anticipate[d] encountering such circumstances infrequently." *Id.* Nevertheless, "in any particular case a sentence, assessed even against the flexible standard of reasonableness, [may] be so far above or below a Guidelines range and so inadequately explained by the sentencing judge as to require rejection on appeal." *Jones,* 460 F.3d at 196.

## II. Section 3553(c)

A district court is statutorily required to "state in open court the reasons for its imposition of [a] particular sentence." *See* 18 U.S.C. § 3553(c). Where, as here, the sentence is outside of an advisory Guidelines range, the court must also state "with specificity in the written order" "the specific reason" for the sentence imposed. *Id.* § 3553(c)(2); *see also Jones,* 460 F.3d at 196; *United States v. Lewis,* 424 F.3d 239, 243–45 (2d Cir.2005).

"[O]ur . . . ability to uphold a sentence as reasonable will be informed by the district court's statement of reasons (or lack thereof) for the sentence that it elects to impose." *Rattoballi,* 452 F.3d at 134. Fulfilment of the statutory requirements of section 3553(c) thus enables us to perform reasonableness review. *Cf. United States v. Pereira,* 465 F.3d 515, 524–25 & n. 9 (2d Cir.2006) (discussing sufficiency of oral explanation under § 3553(c) in terms of its ability to render sentence reasonable).

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [and recommended by the Sentencing Guidelines] . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (emphasis added).

**7.** For a sentence to be procedurally reasonable, the district court must have correctly "(a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other [§ 3553(a) ] factors." *Rattoballi,* 452 F.3d at 131. Sindima does not allege his sentence was procedurally unreasonable.

Yet as much as our review of a sentence depends upon the reasons given for it, we have declined to encroach upon the province of district courts by dictating a precise mode or manner in which they must explain the sentences they impose. As we have frequently observed, we do not require district courts to engage in the utterance of "robotic incantations" when imposing sentences in order to assure us that they have weighed in an appropriate manner the various section 3553(a) factors. *Crosby,* 397 F.3d at 113; *see also Fernandez,* 443 F.3d at 29 (" '[N]o specific verbal formulations should be prescribed to demonstrate the adequate discharge of the duty to "consider" matters relevant to sentencing.' " (quoting *Fleming,* 397 F.3d at 100)). And where, as here, the district court imposes a non-Guidelines sentence, unlike many other circuits we have been— and remain—disinclined to adopt a more mechanical rule requiring "a more compelling accounting the farther a sentence deviates from the advisory Guidelines range." *Rattoballi,* 452 F.3d at 134; *id.* (citing cases).

"We have declined to articulate precise standards for assessing whether a district court's explanation of its reason for imposing a non-Guidelines sentence is sufficient. . . ." *Pereira,* 465 F.3d at 524. But, in the course of imposing a sentence, the district court's statement of reasons must at least explain—in enough detail to allow a reviewing court, the defendant, his or her counsel, and members of the public to understand, *see Lewis,* 424 F.3d at 247— why the considerations used as justifications for the sentence are "sufficiently compelling [ ]or present to the degree necessary to support the sentence imposed." *Rattoballi,* 452 F.3d at 137. To be sure, there may be circumstances in which a "cursory" statement will prove sufficiently compelling. *See Pereira,* 465 F.3d at 524– 25. But cursory or not, where the district court does not meet this obligation, "we

may be forced to vacate a marginal sentence where the record is insufficient, on its own, to support the sentence as reasonable." *Rattoballi,* 452 F.3d at 135.

III.  Sindima's Sentence

■  Sindima's thirty-six month sentence was twenty-six months, or 260 percent, greater than the high end of the advisory Guidelines range applicable to his violation of probation. We find it instructive, for purposes of comparison, that Sindima's criminal record put him in the minimum criminal history category: I. Had he been, by stark contrast, a career criminal with a criminal record placing him in the maximum category, VI, the *high end* of his range would have been twenty-seven months, nine months *shorter* than the sentence the district court imposed upon him. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 7B1.4(a) (setting forth a Guidelines range of 21–27 months for a Grade B violator with criminal history category VI). Similarly, had Sindima's conduct fallen within the most serious of probation violations—crimes of violence, drug or firearms crimes, and crimes punishable by more than twenty years' imprisonment—the high end of the applicable Guidelines range would have been eighteen months, *half* the length of incarceration imposed upon him by the district court. *Id.* Sindima's sentence therefore strikes us as "marginal." *Rattoballi,* 452 F.3d at 135. The facts and statements of the court do not on the present record support the severity of the sentence, but we do not foreclose the possibility that there may be other, unstated factors that impelled the court to impose it which, if identified, would persuade us that the sentence was appropriate.

The first articulated basis for the length of the district court's sentence was that the defendant engaged in "egregious con-

duct" despite being given a "substantial break" at the time of his original sentencing. The district court's frustration with and resulting anger at Sindima for responding to the court's leniency by going on something of a crime spree is understandable. But the Sentencing Commission has indicated that while the three-tiered system for probation violations is "based on the defendant's actual conduct," U.S.S.G. § 7B1.1 cmt. n. 1, sentences for probation violations are not intended to substitute for sentences resulting from commission of the crime constituting the violation—in this case, sentences for the 2005 crimes against the banks, had state or federal prosecutors successfully pursued them. The Commission adopted the view, instead, that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, *to a limited degree*, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. Chap. 7, Pt. A.3(b) (emphasis added); *see also id.* at § 7B1.3(f) (indicating sentence for probation violation to be served consecutively with any other sentence imposed). Sindima's failure to appreciate fully the "break" given to him by the district court when it imposed its original Guidelines sentence of probation without imprisonment for his fraudulent procurement of computer equipment—that is, his failure to appreciate, and return, the trust the district court placed in him in deciding against incarceration—therefore appears to have been not only factored into the advisory range of four-to-ten months, but also the primary basis for Sindima's imprisonment for violation of probation under the prevailing policy of the Sentencing Commission.

Thus, it seems to us, when the district court relied on Sindima's recidivism in the face of the "substantial break" he received in his original sentence to impose a sentence substantially in excess of the advisory Guidelines maximum, Tr., Apr. 13, 2006, at 17, it was relying on a factor for which the Guidelines range was designed to account. The court therefore was required to proffer a sufficient explanation as to why Sindima's breach of trust warranted a sentence more than three-and-one-half times the maximum recommended by the Guidelines for run-of-the-mill such breaches of trust. *See United States v. Zapete-Garcia*, 447 F.3d 57, 60 (1st Cir.2006) ("When a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation."). We do not think the district court has yet made an adequate such explanation.

The district judge did emphasize that Sindima's probation violation was not "an isolated bad judgment call" and that it constituted an "egregious" scheme involving "a calculated pattern of fraudulent activity on a repeated basis," the same type of conduct for which he had been placed on probation in the first instance. Tr., Apr. 13, 2006, at 17. We do not doubt that these considerations are relevant in assessing the severity of Sindima's breach of trust. But in light of the advisory Guidelines' comment that the conduct underlying the violation is to be considered only "to a limited degree," U.S.S.G. Chap. 7, Pt. A.3(b), the "extent of [Sindima's] criminal behavior," Tr., Apr. 13, 2006, at 17, does not, without more, seem to us to support a sentence several times greater than the advisory maximum. *Cf. Rattoballi*, 452 F.3d at 134 (stating that non-Guidelines sentence imposed "in reliance on factors incompatible with the Commission's policy statements may be deemed substantively unreasonable in the absence of [a] persuasive explanation as to why the sentence

actually comports with the § 3553(a) factors").

We do not find the district court's second ground for Sindima's sentence, his personal characteristics, any more helpful. The court seemed to weigh them only with regard to its initial inclination to sentence Sindima to the statutory maximum penalty. Tr., Apr. 13, 2006, at 17. The proper starting point for the district court's analysis, however, was the applicable Guidelines range, *Crosby*, 397 F.3d at 111–12, not the statutory maximum. The district court's decision to sentence the defendant to less than the statutory maximum of five years on the basis of defense counsel's submissions as to Sindima's character therefore tells us little about why the statutory maximum sentence might have been reasonably considered or why a sentence more than three-and-one-half times the advisory Guidelines range is reasonable.

We therefore conclude that on the present record, we are not confident that the grounds upon which the district court relied are "sufficiently compelling [and] present to the degree necessary to support the sentence imposed." *Rattoballi*, 452 F.3d at 137. We therefore remand the case to the district court. If the district court determines that the same sentence as that which is now in effect is indeed warranted, it may reimpose such a sentence accompanied by a statement of reasons that are "sufficiently compelling [and] present to the degree necessary to support the sentence imposed." *Id.* If, however, in light of the foregoing discussion, it determines that a different sentence is called for, it may impose that sentence accompanied by a statement of the reasons for it. The court should also record its reasons for the sentence in its written judgment pursuant to 18 U.S.C. § 3553(c)(2).

We urge the district court to act within sixty days after the date of this decision. After an amended judgment is issued by the district court, jurisdiction may be restored to this court by letter from any party, and the Clerk's Office of this court shall set an expeditious briefing schedule and send such proceeding to this panel for disposition. *See United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994).

## CONCLUSION

For the foregoing reasons, we remand this cause to the district court for further proceedings consistent with this opinion. Because of the relatively short periods involved, the mandate shall issue forthwith.