UNITED STATES of America, Plaintiff–Appellee,

v.

Artez Lamont JOHNSON, Defendant–Appellant.

No. 05–4378.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 1, 2006.

Decided April 7, 2006.

**ARGUED:** Bridgett Britt Aguirre, Fuquay–Varina, North Carolina, for Appellant. Christine Witcover Dean, Assistant United States Attorney, Office of the United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frank ·D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Before WILKINS, Chief Judge, and WILKINSON and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Chief Judge WILKINS and Judge LUTTIG joined.

## OPINION

WILKINSON, Circuit Judge.

In this case we address both substantive and procedural challenges to the reasonableness of a sentence imposed within a properly calculated advisory Sentencing Guidelines range. We reject both challenges and affirm the sentence.

### I.

On December 10, 2003, a confidential informant and an undercover officer contacted defendant Artez Lamont Johnson about a drug purchase. Johnson agreed to sell drugs, and arranged for their delivery with the assistance of Travis Leon Webb. That same day, the confidential informant and undercover officer purchased 24.3 grams of crack cocaine and 13.9 grams of powder cocaine from Johnson for $1500. On December 17, 2003, the undercover officer again contacted defendant for drugs. The two met, and Johnson sold the officer 18.7 grams of crack cocaine and seven grams of powder cocaine for $1000.

Several weeks later, on February 1, 2004, a police officer with the Roanoke Rapids, North Carolina Police Department stopped defendant for speeding. After smelling marijuana, the officer requested permission to search the vehicle, and Johnson consented. The officer discovered 22.8 grams of crack cocaine in a hidden compartment in the car, as well as related drug paraphernalia. Defendant was arrested.

On September 16, 2004, Johnson was charged in a three-count indictment. Count One alleged that Johnson aided and

abetted Travis Leon Webb in the distribution of more than five grams of cocaine base (crack cocaine) and a quantity of cocaine. *See* 18 U.S.C. § 2 (2000); 21 U.S.C. § 841(a)(1) (2000). Count Two charged distribution of more than five grams of cocaine base and a quantity of cocaine, *see id.*, and Count Three charged possession with intent to distribute more than five grams of cocaine base, *see id.* On November 16, 2004, defendant pled guilty to all three counts.

The *U.S. Sentencing Guidelines Manual* § 3D1.2 (2004) provides that "[a]ll counts involving substantially the same harm shall be grouped together," and that this grouping applies, inter alia, "[w]hen the offense level is determined largely on the basis of ... the quantity of a substance involved." Relying on this provision, the presentence report totaled the amount of cocaine in defendant's various charges, and recommended a base offense level of 32. It also proposed a three-level reduction for acceptance of responsibility, for a final offense level of 29. Combined with a criminal history category of II, the applicable Guidelines range was 97 to 121 months in prison.

Johnson did not object to this Guidelines calculation, but contended that, with the Guidelines now advisory, *see United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 756–57, 160 L.Ed.2d 621 (2005), the district court should not apply § 3D1.2's drug quantity grouping provision. The district court disagreed, concluding that Johnson's suggestion would "gut[ ] the guidelines." Following the recommendation in the presentence report, the district court instead determined that the proper range was 97 to 121 months. It thereafter sentenced defendant on each count to 97 months in prison and five years of supervised release, with the sentences to run concurrently. Defendant noted a timely appeal.

## II.

Defendant was sentenced under the advisory Sentencing Guidelines, and we thus review his sentence for reasonableness. *See United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 765, 160 L.Ed.2d 621 (2005); *United States v. Green*, 436 F.3d 449, 456 (4th Cir.2006). "The reasonableness of a sentence ultimately will turn on the particular factors of each case," but "certain principles would appear to be universally applicable." *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir.2006). Foremost among these is that a sentence within the proper advisory Guidelines range is presumptively reasonable. *See id.; Green*, 436 F.3d at 457. This approach to post-*Booker* appellate review is required for three basic reasons: the process by which the Guidelines were established, their incorporation of Congress's sentencing objectives, and the individualized factfinding required to apply them.

While we stated in both *Moreland* and *Green* that Guidelines sentences are presumptively reasonable, neither case involved a sentence within a properly calculated Guidelines range. *See Moreland*, 437 F.3d at 435 (variance sentence); *Green*, 436 F.3d at 458 (incorrectly calculated Guidelines range). Because the instant case presents our first occasion to apply this presumption, we take this opportunity to briefly explore the three justifications outlined above in greater detail.

## A.

The first reason that Guidelines sentences are presumptively reasonable under *Booker* is the legislative and administrative process by which they were created. Dissatisfied with widespread sentencing disparities among offenders who engaged in similar criminal conduct, Congress in the Sentencing Reform Act of 1984 established

the United States Sentencing Commission and charged it with devising a set of determinate sentencing guidelines. *See* 18 U.S.C.A. § 3551 et seq. (West 2005); 28 U.S.C.A. § 991 et seq. (West 2005); *Booker*, 125 S.Ct. at 762; *Mistretta v. United States*, 488 U.S. 361, 366–70, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Though its goals were overarching, *see* 28 U.S.C.A. § 991(b)(1), Congress was hardly inattentive to detail, *see Mistretta*, 488 U.S. at 374–77, 109 S.Ct. 647. It instructed the Commission to craft a sentencing range "for each category of offense involving each category of defendant," 28 U.S.C.A. § 994(b)(1), and to establish categories of offenses and defendants based on a variety of different factors, *id.* §§ 994(c), (d). While Congress granted the Commission wide discretion, that discretion was focused by both the general structure and more specific considerations that Congress enumerated. *See United States v. La-Bonte*, 520 U.S. 751, 753, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997).

The Sentencing Commission, in turn, promulgated offense levels, criminal history categories, and grounds for upward and downward departures. *See generally U.S. Sentencing Guidelines Manual* (2005). It supplemented these guidelines with policy statements and further commentary. *See id.; Stinson v. United States*, 508 U.S. 36, 41, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). As the Commission noted:

> The Commission emphasizes that it drafted the initial guidelines with considerable caution. It examined the many hundreds of criminal statutes in the United States Code. It began with those that were the basis for a significant number of prosecutions and sought to place them in a rational order.
> It developed additional distinctions relevant to the application of these provisions and it applied sentencing ranges to

each resulting category. In doing so, it relied upon pre-guidelines sentencing practice as revealed by its own statistical analyses based on summary reports of some 40,000 convictions, a sample of 10,000 augmented presentence reports, the parole guidelines, and policy judgments.

*U.S. Sentencing Guidelines Manual* § 1A1.1 cmt. background (2005) (reproducing comments to the 1990 amendments). This research is ongoing, as the Commission is instructed to periodically review and revise the Guidelines. *See* 28 U.S.C.A. § 994(*o*); *Booker*, 125 S.Ct. at 766. The Commission may also only promulgate guidelines pursuant to the publication and hearing requirements of informal rulemaking. *See* 28 U.S.C.A. § 994(x); *Stinson*, 508 U.S. at 44–45, 113 S.Ct. 1913. Moreover, Congress was free to modify or reject any guideline when first promulgated, *see* Act of Oct. 12, 1984, Pub. L. No. 98–473, § 235, 98 Stat. 1837, 2032, and remains free to do so now, *see* 28 U.S.C.A. § 994(p); *Mistretta*, 488 U.S. at 393–94, 109 S.Ct. 647.

By now, the Guidelines represent approximately two decades of close attention to federal sentencing policy. *See United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir.2005). It would be an oddity, to say the least, if a sentence imposed pursuant to this congressionally sanctioned and periodically superintended process was not presumptively reasonable.

### B.

The second reason that Guidelines sentences are presumptively reasonable is that the process described above has led to the incorporation into the Guidelines of the factors Congress identified in 18 U.S.C.A.

§ 3553(a) as most salient in sentencing determinations.*

Congress in fact instructed the Commission to take these § 3553(a) factors into account when constructing the Guidelines. *See* 28 U.S.C.A. §§ 991(b)(1)(A), (b)(2); 994(a)(2), (b)(1), (g), (m). The Commission has done so. Initially, by devising a recommended sentencing range for every type of misconduct and every level of criminal history, the Guidelines as a whole embrace "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6). Indeed, uniformity of sentencing was one of the Guidelines' primary purposes, *see Booker*, 125 S.Ct. at 761; *Mistretta*, 488 U.S. at 366–67, 109 S.Ct. 647, and the Guidelines themselves thus constitute one of the factors in § 3553(a), *see* 18 U.S.C.A. § 3553(a)(4).

The § 3553(a) factors are built into the Guidelines in other ways as well. The offense levels and criminal history categories squarely address "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C.A. § 3553(a)(1). The various adjustments and enhancements bear upon the need for the sentence "to reflect the seriousness of the offense ... and to provide just punishment." *Id.* § 3553(a)(2)(A). And the elevated criminal history categories for repeat offenders and career crimi-

nals reflect the congressional intention "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B) and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). *See U.S. Sentencing Guidelines Manual* ch. 4, pt. A, introductory cmt. The conclusion to be drawn is that the advisory Guidelines are not something separate and apart from Congress's objectives in § 3553(a). Rather, they embody many of those objectives.

## C.

This leads to the third reason why Guidelines sentences must be treated as presumptively reasonable, namely, that such sentences are based on individualized factfinding and this factfinding takes place in a process that invites defendants to raise objections and requires courts to resolve them. Both of these features are designed to lead to a presumptively reasonable sentence.

First, the Guidelines range applicable to each defendant is an individualized determination. Offense level and criminal history category, the two central components of the Guidelines matrix, are determined only after ascertaining a defendant's own conduct and background. *See* Fed.R.Crim.P. 32(d); *U.S. Sentencing Guidelines Manual* § 1B1.1; *see also United States v. Hughes*, 401 F.3d 540, 545 (4th Cir.2005) (noting that imposition of a Guidelines

---

* Those factors are:
  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the

most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [by the Sentencing Guidelines]; (5) any pertinent policy statement [issued by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.
18 U.S.C.A. § 3553(a).

range involves an accounting of "the individual characteristics of each defendant").

Second, this individualized factfinding is extensive, and is designed to give the sentencing court a comprehensive overview of the defendant. Certain information specific to the defendant's misconduct and prior record, criminal and otherwise, is usually set forth in a presentence report. *See* Fed.R.Crim.P. 32(c)(1)(A), (d); *U.S. Sentencing Guidelines Manual* § 6A1.1. To assure reliability, the defendant may object to those facts with which he disagrees, Fed.R.Crim.P. 32(f), requiring the district court to rule on any disputed portions of the presentence report, *id.* 32(i)(3)(B). The entire process, in short, is designed to lead to a full and credible set of facts particular to the defendant himself. The resulting findings form the basis for the applicable Guidelines range, and departures or variances are available when that range does not accurately capture the particular circumstances of an individual defendant, *see Moreland,* 437 F.3d at 432–33 (noting distinction between departures and variances); *U.S. Sentencing Guidelines Manual* § 5K2.0. Such an individualized sentence is necessarily a presumptively reasonable one.

### D.

As our repair to these admittedly basic points makes clear, the Guidelines are not arbitrary benchmarks, nor is their reasonableness simply a matter of administrative convenience. *Booker* found a fatal constitutional defect in the mandatory nature of the Guidelines system, 125 S.Ct. at 750–51, but those values that the Guidelines serve—uniformity, transparency in sentencing, and individualized fact-finding—are features of a reasoned sentencing approach, and relevant to an advisory system just as they were to a mandatory one. Since Johnson was sentenced within the properly calculated Guidelines range, his sentence cannot be other than presumptively reasonable.

### III.

Notwithstanding the foregoing, Johnson disputes the reasonableness of his sentence in two separate ways, one substantive, the other procedural. *See Moreland,* 437 F.3d at 434 ("Reasonableness review involves both procedural and substantive components."). We will address each in turn.

■ First, Johnson argues that it is substantively unreasonable to group the drug quantities in his three charges, as required by the Guidelines. *See U.S. Sentencing Guidelines Manual* § 3D1.2 (2004) (setting forth rules for grouping multiple counts). This grouping provision, which the district court applied, yielded a base offense level of 32. According to Johnson, it would have been more appropriate for the district court to impose a sentence based on the drug quantities in each individual charge, the largest of which would have generated a base offense level of 28.

To the extent Johnson believes that § 3D1.2's grouping provision is unreasonable or unfair as a general matter, the proper forum in which to raise this issue is Congress or the Sentencing Commission, not a federal court. Congress and the Commission have, as we discussed above, spent approximately twenty years refining the Guidelines with an eye toward the sentencing objectives in 18 U.S.C.A. § 3553(a). We are, consequently, ill-equipped and disinclined to quarrel with the Commission's conclusion that grouping of closely related counts is an appropriate way "to provide incremental punishment for significant additional criminal conduct." *U.S. Sentencing Guidelines Manual* ch. 3, pt. D, introductory cmt. (2005); *see also*

*United States v. Eura,* 440 F.3d 625, 634 (4th Cir.2006) (holding unreasonable district court's non-application of the 100:1 crack cocaine/powder cocaine ratio because it "impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses") (internal quotation marks omitted).

Johnson is of course free to challenge the application of § 3D1.2 to his particular case, *see Eura,* 440 F.3d at 634, as he did below. Johnson concedes, however, that the Guidelines range was properly calculated. Nor did he contest any facts in his presentence report. *See United States v. Terry,* 916 F.2d 157, 162 (4th Cir.1990). The district court concluded that the advisory Guidelines provided a fair estimation of the punishment defendant should receive, and we find that conclusion an eminently reasonable one.

Second, Johnson contends that his sentence was procedurally unreasonable because the district court did not articulate express findings under each factor in 18 U.S.C.A. § 3553(a). It is true that in addition to first determining the proper advisory Guidelines range, the district court must also consider the various factors in § 3553(a). *See Green,* 436 F.3d at 455–56; *Hughes,* 401 F.3d at 546. But this is not to say that the district court must robotically tick through § 3553(a)'s every subsection. "To establish the reasonableness of a sentence, a district court need not explicitly discuss every § 3553(a) factor on the record." *Eura,* 440 F.3d at 632; *see also United States v. Williams,* 425 F.3d 478, 480 (7th Cir.2005). This is particularly the case when the district court imposes a sentence within the applicable Guidelines range. *See Green,* 436 F.3d at 456 (noting that district courts must "especially explain[ ]" deviations from the Guidelines).

Were district courts obligated to conduct a § 3553(a) roll call, as defendant insists, we would simply exalt form over substance. Many of the § 3553(a) factors are already incorporated into any Guidelines determination, and the § 3553(a) factors can themselves overlap. *Compare* 18 U.S.C.A. § 3553(a)(2)(A) (courts shall consider the need for sentences "to promote respect for the law") *with id.* § 3553(a)(2)(B) (courts shall consider the need for sentences "to afford adequate deterrence to criminal conduct"). Requiring district courts to address each factor on the record would thus be an exercise in unproductive repetition that would invite flyspecking on appeal. We see no reason to countenance pointless remands when the record shows that the § 3553(a) factors were "adequately and properly considered." *Eura,* 440 F.3d at 632.

■ The record more than sufficiently shows this here. In imposing the 97–month sentence, the district court stated that it found the findings in the presentence report credible and reliable, that it had used these findings to calculate an advisory Guidelines range, and that it had also considered the § 3553(a) factors. While the district court's specific reference to § 3553 was certainly not required, *see, e.g., United States v. McBride,* 434 F.3d 470, 476 n. 3 (6th Cir.2006); *United States v. Long Soldier,* 431 F.3d 1120, 1123 (8th Cir.2005), it may well have been sufficient, *see, e.g., United States v. Alonzo,* 435 F.3d 551, 552, 554 (5th Cir.2006) (holding that sentence was reasonable where district court indicated "that it had 'considered the Guidelines' " and stated "that 'the sentence within those Guidelines is consistent and takes into account the purposes of 18, United States Code, Section 3553(a)' "); *United States v. Scott,* 426 F.3d 1324, 1330 (11th Cir.2005) ("[T]he district court explicitly acknowledged that it had considered [defendant's] arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-*Booker* sentences.").

Here, however, the district court went considerably further by undertaking a detailed inquiry into the various circumstances bearing upon Johnson's sentence. It addressed defendant's character, specifically took note of letters written on his behalf, and heard argument on, inter alia, the circumstances of his offenses and his relationship with his family, *see United States v. Jimenez–Beltre,* 440 F.3d 514, 518–19 (1st Cir.2006) (en banc) (noting that when reviewing sentences under an advisory system, a district court's reasoning "can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did"). The district court here also canvassed Johnson's criminal history, explaining that while his past criminal conduct was not "considerable," he nonetheless had committed a drug offense before, had lied in his pre-trial interview about recent marijuana use, and was facing pending state forgery charges. In addition, the court recommended Johnson for a special treatment program after chronicling his problems with drug and alcohol abuse. Although the district court did not explicitly match these various findings to particular § 3553(a) factors, it was not required to do so. *See Eura,* 440 F.3d at 632; *see also United States v. Williams,* 436 F.3d 706, 708–09 (6th Cir.2006). Nothing about the proceedings suggests defendant's request for a remand is well-taken.

## IV.

Because the district court properly calculated the advisory Guidelines range and adequately considered the § 3553(a) factors, we find defendant's sentence reasonable. The judgment is

*AFFIRMED.*