**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4416**

———————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

ALEX OHARA KING,

                                        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern.  Louise W. Flanagan, Chief District Judge.  (7:05-cr-00088-FL-DAN)

———————

Submitted:  January 19, 2007        Decided:  March 16, 2007

———————

Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Diana Pereira, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  George E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer May-Parker, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Alex Ohara King appeals his sentence of 84 months' imprisonment, which was at the low end of the advisory guidelines range, arguing that it was unreasonable. Because King has failed to rebut the presumption of reasonableness attached to his within-the-guidelines sentence, we affirm.

## I.

On April 26, 2004, the Brunswick County Sheriff's Office responded to a shooting, which occurred at Travis Johnson's residence in Supply, North Carolina. An investigation revealed that on that day, King approached Johnson and his friend Kenneth Bryant, Jr., who were both sitting on Johnson's porch. King said to Bryant, "I heard you were at my house." (J.A. at 110.)[1] King then drew a handgun and fired at Bryant, although he failed to hit him. King attempted to fire again, but the gun malfunctioned. Bryant retreated into the house unharmed, and King eventually fled the scene.

A warrant was subsequently issued for misdemeanor assault with a deadly weapon, and on April 30, 2004, King surrendered to the Sheriff's Office. King also surrendered the .380 caliber handgun that he had used to fire at Bryant. King stated that he shot at

---

[1]Citations to the "J.A." refer to the joint appendix filed with this appeal.

2

Bryant because Bryant had previously made sexual advances toward King's teenage daughter.

On January 13, 2005, the Sheriff's Office conducted an unrelated traffic stop of King's vehicle. King was arrested for driving with a suspended license and it was determined that he had an unrelated outstanding warrant. King consented to a search of his vehicle, and the police found an assault rifle and two thirty-round magazines stored under the rear seat where his infant son was seated. The police also discovered a small amount of cocaine base, which King stated he was going to trade for sex.

Approximately seven months later, on July 7, 2005, the Sheriff's Office responded to a shooting in Supply. Investigators found the victim, Melissa Carpenter, who had been shot in the leg by King. Carpenter did not wish to press charges, but stated that she and King had been fighting when King shot her. The next day, King turned in a .22 caliber revolver to the police, which he stated he had wrestled away from Carpenter. On July 14, 2005, King traveled to the Sheriff's Office to talk with investigators. Upon his arrival, investigators searched his car and discovered eight rounds of .380 caliber ammunition.

On August 10, 2005, King was named in a four-count indictment in the Eastern District of North Carolina, charging him with being a felon in possession of a firearm on April 30, 2004 (Count One); on January 13, 2005 (Count Two); on July 7, 2005 (Count Three); and

with being a felon in possession of ammunition on July 14, 2005 (Count Four), each count a violation of 18 U.S.C. § 922(g)(1).

King pleaded guilty to Count One without a plea agreement, and the Government thereafter dismissed Counts Two through Four. Based on prior felony convictions for assault with a deadly weapon and common law robbery,[2] the pre-sentence report (PSR) determined King's base offense level for his § 922(g) conviction to be 24. Pursuant to § 2K2.1(b)(1)(A) of the 2005 Sentencing Guidelines Manual, the PSR recommended a two-level upward adjustment on a finding that the offense involved three different firearms. Pursuant to § 2K2.1(b)(5), the PSR also recommended a four-level upward adjustment on a finding that King used a firearm in connection with another felony offense. Finally, the PSR recommended a two-level downward adjustment based on King's acceptance of responsibility. The end result was a total recommended offense level of 28. Based on King's criminal history category of VI, the guideline range would have been 140 to 175 months. The statute, however, allows only for a maximum sentence of 120 months, so the PSR identified the guideline range as 120 months' imprisonment. See 18 U.S.C.A. § 924(a)(2) (West 2000 & Supp. 2006) (providing in relevant part that whoever knowingly

_____

[2]The PSR noted that King had twice been convicted of misdemeanor assault with a deadly weapon, once of common law robbery, twice of assault on a female, once of credit card fraud, as well as various other convictions.

4

violates § 922(g) is subject to imprisonment of "not more than 10 years").

King objected to the PSR, contending that his criminal history category should have been V, and that his total offense level should have been 17, resulting in a guideline range of 46 to 57 months. King further argued that because of his family responsibilities (he is the primary provider for his children) and the victim's conduct (contending that Bryant instigated King's assault), a downward variance from the guidelines was warranted.

The district court then conducted a lengthy sentencing hearing. The court began by noting King's extensive criminal history and his past drug use. It also noted that he was employed and responsible for his children, and the court considered letters written by King's children on his behalf. Addressing King's specific objections to the PSR, the district court sustained King's objections to the four-level enhancement for possessing a firearm in connection with another felony and the two-level enhancement for the involvement of three or more firearms. The district court, however, overruled King's objection to use of his assault convictions as part of his criminal history. The district court therefore concluded that King's total offense level should be set at 22, resulting in an advisory guidelines range of 84-105 months.

At the district court's behest, King's counsel then addressed the court concerning his motion for a downward departure or a

variance. First, the district court found that there was no support for a sentencing departure based on the victim's conduct, because King's response was "disproportionate." (J.A. at 86.) Because Bryant was nowhere near the vicinity of King's house or daughter, it was not necessary for King to locate him on a friend's porch and fire errant rounds at Bryant. The district court also found that King's family circumstances were not extraordinary. Accordingly, the district court declined to vary from the guidelines.

Toward the conclusion of the sentencing hearing, the district court noted that it had considered King's guideline range as well as other factors in addition to and including the factors set forth in the Sentencing Reform Act. The district court noted that King should participate in an intensive drug treatment program and recommended physical and mental health treatment as well. Although the district court explicitly considered King's "responsibilities as a family man," (J.A. at 97), it determined that a sentence of 84 months' imprisonment at the low end of the guideline range was necessary and appropriate because it was clear that King had put numerous members of the public and his family at risk and needed to "get over some demons." (J.A. at 97.)

II.

Because King was sentenced under the advisory guidelines, we review his sentence for reasonableness. United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006). The reasonableness of a sentence turns on the peculiar facts of each case, but "certain principles would appear to be universally applicable." United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). "Foremost among these is that a sentence within the proper advisory Guidelines range is presumptively reasonable." United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006). "This approach to post-Booker appellate review is required for three basic reasons: the process by which the Guidelines were established, their incorporation of Congress's sentencing objectives, and the individualized factfinding required to apply them." Id. In determining whether a sentence was reasonable, we review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006). "Reasonableness review involves both procedural and substantive components." United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

King argues that a lower sentence was appropriate in light of the 18 U.S.C.A. § 3553(a) factors and that the district court procedurally erred in failing to explain why a sentence of 84 months was appropriate. King's arguments are without merit.

7

King "can only rebut the presumption [of reasonableness] by demonstrating that [his] sentence is unreasonable when measured against the § 3553(a) factors." United States v. Montes-Pineda, 445 F.3d 375, 379 (4th Cir. 2006) (internal quotation marks omitted). King's brief, however, fails to explain how his sentence is unreasonable under those factors, which are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational of vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing rage established [by the guidelines]; (5) any pertinent policy statement issued by the Sentencing Commission . . .; (6) the need to avoid unwarranted sentence disparities . . .; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006).

King's two primary arguments -- (1) that he has family responsibilities and (2) that the victim's conduct was responsible for his gun possession -- are of no help to him. The guidelines manual explains that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S. Sentencing Guidelines Manual § 5H1.6 (2005). We have interpreted this section as standing for the proposition that a downward departure based on family responsibilities should be

8

available only for "extraordinary circumstances." <u>United States v. Brand</u>, 907 F.2d 31, 33 (4th Cir. 1990).

On the other hand, the manual does explain that "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense." U.S. Sentencing Guidelines Manual § 5K2.10. King cannot show, however, that the victim's behavior contributed significantly to his offense. Although King fired at Bryant on April 26, 2004, he was charged with <u>possessing</u> a firearm on April 30, 2004. Putting aside Bryant's alleged conduct, Congress has clearly criminalized King's possession of a firearm, regardless of whether that possession was designed to defend a family member. <u>See, e.g.</u>, <u>United States v. Gilbert</u>, 430 F.3d 215, 220 (4th Cir. 2005) ("Congress sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." (internal quotation marks omitted)). The wisdom in Congress's trust issues is well-supported by King's conduct in this case. Moreover, there was a significant temporal gap between the victim's alleged conduct and King's response, and as the district court properly recognized, King's response was clearly "disproportionate." (J.A. at 86.) King also continued to possess the gun thereafter, as well as other guns and

9

ammunition. Thus, King cannot show that his within-the-guidelines sentence was substantively unreasonable.

King further contends that his sentence was procedurally unreasonable because the district court "provided no explanation for its decision to impose an 84 month sentence." (Appellant's Br. at 14.) The record clearly refutes this contention.

Although a district court must consider the § 3553(a) factors and any meritorious arguments raised by both parties before imposing a sentence, "this is not to say that the district court must robotically tick through § 3553(a)'s every subsection." Johnson, 445 F.3d at 345. "This is particularly the case when the district court imposes a sentence within the applicable Guidelines range." Id. "Requiring district courts to address each factor on the record would . . . be an exercise in unproductive repetition that would invite flyspecking on appeal." Id.

Here, the district court explicitly stated that it had considered the § 3553(a) factors, and that alone "may well have been sufficient." Id. Regardless, "the district court went considerably further by undertaking a detailed inquiry into the various circumstances bearing upon [King's] sentence. It addressed [King's] character, specifically took note of letters written on his behalf, and heard argument on, inter alia, the circumstances of his offenses and his relationship with his family." Id. at 346. Thus, the district court here performed its task just as well, if

10

not better, than the sentencing court in <u>Johnson</u>.  Like the court under review in <u>Johnson</u>, the district court here also recommended King for special treatment programs, and although it "did not explicitly match these various findings to particular § 3553(a) factors, it was not required to do so." <u>Id.</u>   In short, the district court took a model approach to sentencing King, taking seriously King's arguments, his guideline range, and the § 3553(a) factors.  After doing so, it imposed an entirely reasonable sentence.  Accordingly, "[n]othing about the proceedings suggests [King's] request for a remand is well-taken." <u>Id.</u>

## III.

Accordingly, we affirm King's sentence.  We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>