**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4255

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ABDORASOOL JANATI; FOROUZANDEH JANATI,

Defendants - Appellants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (CR-03-433)

Argued:  March 13, 2007                Decided:  August 1, 2007

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stuart Alexander Sears, ZWERLING, LEIBIG & MOSELEY, P.C., Alexandria, Virginia; Matthew William Greene, SMITH & GREENE, P.L.L.C., Fairfax, Virginia, for Appellants.  David Benjamin Joyce, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** John K. Zwerling, ZWERLING, LEIBIG & MOSELEY, P.C., Alexandria, Virginia, for Appellant Forouzandeh Janati.  Paul J. McNulty, United States Attorney, Steve A. Linick, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dr. Abdorasool Janati and his wife, Mrs. Forouzandeh Janati, were convicted of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and 61 substantive counts of health care fraud, in violation of 18 U.S.C. § 1347. They challenge both their convictions and sentences. We affirm.

I

For over ten years, Dr. Janati and his wife, Mrs. Janati, ran the Neurological Institute of Northern Virginia. Dr. Janati was a neurologist, and the Neurological Institute was his practice. Mrs. Janati was the office manager.

Between 1996 and 2003, the Janatis defrauded Medicare and private insurance companies, overbilling them in three ways. First, in billing insurers for nerve conduction tests, they inflated the number of tests actually performed. Second, they billed insurers for brain wave studies that were never conducted. Third, they "upcoded" office visits, meaning that when they billed insurers, they represented that an office visit was more involved or complex than it actually was, justifying a higher billing rate.

The Janatis submitted bills to insurers, coding the work performed in accordance with the Physicians' Current Procedural Terminology (CPT) manual. The CPT manual lists standardized codes which correlate to procedures and services performed by

physicians.  The CPT manual has five codes for office visits, which are at issue in this case, ranging from Code 99211 to Code 99215, in increasing order of complexity and comprehensiveness. Code 99211, the lowest level for such visits, is used when "the presenting problem(s) are minimal.  Typically, 5 minutes are spent performing or supervising these services."  Code 99215, the highest level for office visits, applies to visits that have at least two of the following three components:  (1) "a comprehensive history"; (2) "a comprehensive examination"; and (3) "medical decision making of high complexity."  The "presenting problem(s)" are usually of moderate to high severity, and physicians "typically spend 40 minutes face-to-face with the patient and/or family."

At trial, the evidence showed that the Janatis billed virtually all office visits using the highest code, Code 99215, without regard to the seriousness of the patient's problem or the complexity of the visit.  The government's expert on medical billing codes examined 471 office visits, including the visits which were the subject of the indictment, and determined that every one of the office visits was billed using Code 99215.  When asked if the use of that billing code was justified for any of the office visits, the expert replied, "Not a one."

While the Janatis correctly pointed out that selecting the proper billing code for a given visit required some judgment, the

-3-

government's expert reiterated that the visits that she examined were "[n]ot even close" to being properly classified at the Code 99215 level. Additionally, the government presented evidence that Mrs. Janati had removed all billing codes below the Code 99214 level from the standard billing form used in the office. Former employees testified that the Janatis instructed them to bill all follow-up visits under Code 99215, even though representatives of Medicare and other insurance plans had warned them that this was improper.

Following conviction, the government offered another expert on medical billing to support the forfeiture order. He testified by affidavit that of 364 billing records reviewed, 358 had been billed using Code 99215 (six records were missing), and that each of the records reviewed involved an inappropriate upcoding.

At sentencing, the government and Dr. Janati (but not Mrs. Janati) stipulated to the appropriate sentencing factors for calculating the offense level under U.S.S.G. § 2B1.1 (offenses involving fraud or deceit). To the base offense level of 6, they agreed to add 14 levels, based on a calculation of the insurers' economic losses from the fraud of between $400,000 and $1 million. See U.S.S.G. § 2B1.1(b)(1)(H). The calculation resulted from adding overpayments made by insurers ($136,110 for nerve conduction tests that were never performed and $37,583 for brain wave tests that were never performed) to losses caused by

-4-

overbilling for office visits (estimated by statistical sampling to be $359,468.58). While the calculation resulted in a figure greater than $530,000, Dr. Janati and the government stipulated to the somewhat smaller figure of $445,598.66. In addition, they agreed that the number of victim insurers was between 10 and 50, resulting in another 2-level increase. Thus, under the stipulation, the final offense level was 22, although the government remained free to argue for an additional 2-level enhancement for abuse of a position of trust.

In sentencing Dr. Janati, the district court found that "the loss and role in the offense that was agreed to by the parties here [was] properly assessed." Declining any additional enhancement, the court sentenced Dr. Janati to 41 months' imprisonment, the bottom of a Guidelines range. The court also entered, by consent of Dr. Janati and the government, an order of restitution, requiring payment to the victim insurers of $445,598.66 (the same as the stipulated economic losses).

In sentencing Mrs. Janati, who represented herself at sentencing, the district court imposed the same sentence. Incorporating the findings that the court made with respect to Dr. Janati, the district court found Mrs. Janati's "Guideline factors to be properly assessed at a range of 41 to 51 months as well." The court also entered a restitution order making Mrs. Janati

jointly and severally liable for the restitution required of Dr. Janati.

II

First, the Janatis contend that their convictions for upcoding should be overturned, because the standards for choosing one billing code over another were "fatally vague," in violation of the Fifth Amendment's Due Process Clause. They reason that the fraud alleged in the "upcoding" counts was based on the standards of the CPT manual, which are too "vague and ambiguous" to "provide adequate guidance and/or notice upon which a criminal conviction could validly exist."

While the Janatis focus on potential ambiguities in various terms of the CPT manual, the fact remains that they were charged with violating the health care fraud statute, 18 U.S.C. § 1347, not the CPT manual. The vagueness inquiry rests on whether the challenged law provides sufficient notice for people to conform their conduct to the law and to prevent arbitrary or discriminatory enforcement. See Hill v. Colorado, 530 U.S. 703, 732 (2000); Kolender v. Lawson, 461 U.S. 352, 357 (1983) (noting due process requires that "a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"). The CPT

-6-

manual simply does not contain mandates backed by legal sanctions, such that officials must enforce them or that people need sufficient notice of them so as to avoid penalties. Any vagueness in the CPT manual itself cannot be the basis for a due process challenge to the fraud violations in this case.

The Janatis were convicted under the health care fraud statute, 18 U.S.C. § 1347, which punishes one who

> knowingly and willfully executes . . . a scheme or artifice . . . to obtain, by means of false pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery or payment for health care benefits.

This provision is not overly vague. It gives ample notice that criminal liability attaches to those who knowingly give a representation that could be shown to be objectively false about services performed for the purpose of obtaining money. These specific, particular elements more than satisfy the demands of due process. It is therefore unsurprising that courts have uniformly rejected vagueness challenges to the parallel mail, bank, and securities fraud statutes, see 18 U.S.C. §§ 1341-48. See, e.g., United States v. Welch, 327 F.3d 1081, 1109 n.29 (10th Cir. 2003); United States v. Szur, 289 F.3d 200, 209 n.5 (2d Cir. 2002).

The Janatis' contention that the CPT manual supports a vagueness claim would merit more serious consideration if the government failed to prove scienter, thereby undermining the legal basis for their convictions. The health care fraud statute

-7-

requires a specific intent to defraud, see 18 U.S.C. § 1347, and the indictment charged that the Janatis knowingly misrepresented that Dr. Janati had performed services that qualified for billing at the Code 99215 level. Any opacity of the CPT manual would have to be so great that one could not know the proper code and therefore could not knowingly record an improper code. But then, the Janatis' vagueness challenge would be no more than a challenge to the sufficiency of the evidence of their mental states.

The evidence overwhelmingly demonstrates, however, that the Janatis knowingly used improper CPT codes if for no other reason than the fact that they altered their forms to eliminate even the option of billing at a level lower than Code 99214. In addition, before 1996, the Janatis billed the majority of their services at the Code 99213 level, which demonstrates their knowledge of the proper codes. After 1996, they billed every visit at the highest level, showing a lack of any good faith concern with how to bill at the proper level. The government's expert testified at trial that none of the charged visits came "even close" to warranting the Code 99215 billing level. Finally, there was evidence that the Janatis continued to bill falsely even after being specifically warned by Medicare officials and other insurers that their billing was improper. The evidence that the government presented was thus incompatible with the Janatis' claim that the

-8-

CPT manual was too vague to understand, and we therefore reject the vagueness challenge.

                                    III

Mrs. Janati contends that, in sentencing her, the district court failed to make findings on the record relating to the sentencing factors of economic loss and the number of victims, claiming that she was improperly saddled with the stipulation entered into by her husband and the government. We conclude that her contention is without merit. The loss figure, while stipulated to by her husband, was actually based on the scrupulous calculation by government experts and was agreed to be the actual loss by the presentence report. Moreover, the district court made an <u>independent</u> finding of the loss figure, stating, "I find the Guideline factors in this case to be properly assessed [with respect to Dr. Janati's sentence] at a range of 41 to 51 months. I find that the loss and role in the offense that was agreed to by the parties here to be properly assessed." He then incorporated that independent finding into Mrs. Janati's Guidelines calculation: "I find the Guideline factors to be properly assessed at a range of 41 to 51 months as well." Because Mrs. Janati's participation in the conspiracy gave no basis for a different calculation and she provided no information suggesting the calculation was wrong, the district court was undoubtedly

correct, and certainly did not commit clear error. This procedure satisfied the district court's obligation to make factual determinations on the record. See United States v. Bolden, 325 F.3d 471, 497 (4th Cir. 2003) (permitting district court to resolve disputed issues of fact simply by making findings on the record or adopting findings contained in the record).

IV

Mrs. Janati similarly contends that the amount of restitution was improperly ordered by the district court based on her husband's stipulation. For the reasons discussed in Part III, the district court did not clearly err in assessing the restitution amount, which was simply the actual loss determined by the government, probation office, and district court. She also contends that the probation officer and the district court failed to comply with the procedural requirements for entering her restitution order. See 18 U.S.C. §§ 3663A, 3664. But she has presented no evidence of such a failure, and we therefore find this argument without merit.

V

Both of the Janatis contend that their sentences of 41 months' imprisonment plus three years' supervised release are unreasonable. They claim that reason required the district court

to impose a lower, variance sentence in light of their commitment to medicine; the destruction of their medical practice; Dr. Janati's age and health problems; their responsibilities to their adult children; and Dr. Janati's continuing to treat patients after their insurers stopped reimbursing him.

We disagree. First, we observe that the sentences fell at the bottom of the Guidelines range. Second, any sentence within the Guidelines enjoys a presumption of reasonableness. See United States v. Green, 436 F.3d 449, 457 (4th Cir. 2006); see also Rita v. United States, ___ S. Ct. ___ (June 21, 2007) (approving this court's presumption of reasonableness for a sentence within the Guidelines). Third, the reasons advanced by the Janatis for a variance sentence are actually discouraged in most instances. See U.S.S.G. § 5H1.1 (age); U.S.S.G. § 5H1.2 (education and vocational skills); U.S.S.G. § 5H1.5 (employment record); U.S.S.G. § 5H1.6 (family ties and responsibilities); U.S.S.G. § 5H1.11 (prior good works). To the extent that the Guidelines already take them into account, consideration of such factors would tend to undermine the sentencing goals of fairness and uniformity.

The reasonableness of these sentences is bolstered by the fact the Janatis benefited from several decisions that the district court made in calculating the Guidelines range. An argument could have been made that the loss amounts upon which the offense levels rested should have been substantially higher.

Similarly, the number of victims defrauded may have been substantially greater than 50, which would have triggered a further two-point enhancement. In addition, Dr. Janati could have received a 2-level enhancement for abuse of a position of trust, and Mrs. Janati could have received a 2-level enhancement for obstruction of justice, as the presentence report recommended. Finally, both could have received enhancements for aggravated roles in the offense. In relation to the provisions of the Sentencing Guidelines, the Janatis received relatively lenient sentences.

Given the far-reaching nature of the Janatis' fraudulent scheme, involving many victims and large sums of money over many years, the sentences appear to fulfill the purposes of sentencing. See United States v. Shortt, 485 F.3d 243, 249 (4th Cir. 2007) ("A sentence that does not serve the announced purposes of § 3553(a)(2) is unreasonable"). They "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), as well as "afford adequate deterrence to criminal conduct," id. § 3553(a)(2)(B).

VI

Finally, we reject the Janatis' argument that the district court failed to provide an adequate explanation of the basis for

their sentences.  See <u>United States v. Johnson</u>, 445 F.3d 339, 345 (4th Cir. 2007) (noting that the district court need not "robotically tick through § 3553(a)'s every subsection"); <u>see also</u> <u>United States v. Eura</u>, 440 F.3d 625, 632 (4th Cir. 2006).

*   *   *

The Janatis' convictions and sentences are

<u>AFFIRMED</u>.