**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 11-4132**

———————————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

ROBERT DEWAIN VENSON,

              Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.    Alexander Williams, Jr., District
Judge.   (8:09-cr-00088-AW-1)

———————————

Submitted:  April 30, 2012         Decided:  June 6, 2012

———————————

Before AGEE, KEENAN, and DIAZ, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Mary E. Davis, DAVIS & DAVIS, Washington, D.C., for Appellant.
Rod J. Rosenstein, United States Attorney, Ann M. O'Brien,
Special Assistant United States Attorney, Robert K. Hur,
Assistant United States Attorney, Greenbelt, Maryland, for
Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Dewain Venson was convicted by a jury of all 26 counts of an indictment charging him with mail and wire fraud, 18 U.S.C. §§ 1341, 1343 (2006) (16 counts), money laundering, 18 U.S.C. § 1956 (2006) (7 counts), and failure to file income tax returns, 26 U.S.C. § 7203 (2006) (3 counts).  He was sentenced to a total term of 120 months' imprisonment and ordered to pay $2,060,021.75 in restitution.  Venson timely appealed.

Between September 2004 and March 2007, Venson engaged in a scheme to defraud a number of mortgage lenders by arranging for the sale of residential properties in Maryland and the District of Columbia, using inflated sales prices and "straw purchasers" who, at Venson's behest, overstated their income and/or creditworthiness.  Venson realized approximately $800,000 from his efforts.  However, he eventually defaulted on the loans and all the properties (thirteen) were sold at foreclosure, resulting in substantial losses for the lenders.  The Government presented testimony from each of the six straw buyers Venson employed to purchase the properties, each of whom was paid a "commission" (generally between $3000 and $7500) for agreeing to pose as a buyer through closing.  Each testified that they understood that Venson paid them for the use of their name and credit to purchase homes, that they had no intention of living in the homes, that they were not required to actually pay the

2

mortgages obtained in their names, and had no involvement in the sales of the properties other than to attend the closings. In addition to the straw buyers, the Government also presented the testimony of eight property sellers, each of whom testified that they never met the straw buyers prior to closing, and that the sales price shown on the settlement documents was higher than the "true" price negotiated with Venson, but that none of them received the differential. Rather, the money was received by Venson.

Rasheeda Canty, a loan officer for various mortgage brokers between 2004 and 2005, testified that Venson would send straw buyers to her in order to obtain financing. According to Canty, she and Venson referred to such buyers as "credit partners" and, together, they would falsify loan applications in order to qualify the buyers.

At sentencing, the district court determined that the aggregate net loss amount attributable to Venson's conduct was $2,060,021.76, by subtracting from the original loan amount the price for which the property was sold after foreclosure and any payments made on the mortgages prior to foreclosure. Based on a total offense level of 31 and a criminal history category III, Venson's advisory Guidelines range was 135-168 months' imprisonment. However, the district court departed downward and imposed a sentence of 120 months.

Venson appeals, challenging the sufficiency of the evidence, the restitution order, and his sentence. For the reasons that follow, we affirm.

When a defendant challenges the sufficiency of the evidence supporting the jury's guilty verdict, this court views the evidence and all reasonable inferences in favor of the Government and will uphold the jury's verdict if it is supported by substantial evidence. United States v. Cameron, 573 F.3d 179, 183 (4th Cir. 2009). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. (internal quotation marks omitted). In reviewing for substantial evidence, this court will not weigh evidence or review witness credibility. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Rather, it is the role of the jury to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. Id.; United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). Appellate reversal on grounds of insufficient evidence "will be confined to cases where the prosecution's failure is clear." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010) (internal quotation marks omitted).

Mail fraud under § 1341 and wire fraud under § 1343 have two essential elements: (1) the existence of a scheme to

defraud and (2) the use of the mails or wire communication in furtherance of the scheme. See United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001); United States v. ReBrook, 58 F.3d 961, 966 (4th Cir. 1995). Venson argues that the Government failed to prove the first element in that it did not show that he had the requisite fraudulent intent because he acted in good faith, with the intention of repaying the loans. However, intent to repay is irrelevant. See United States v. Curry, 461 F.3d 452, 458 (4th Cir. 2006) ("The intent to repay eventually is irrelevant to the question of guilt for fraud."). Venson also claims that the bank/victims failed to review the loan documentation and, therefore, subjected themselves to the risk of fraudulently-issued loans. In order to prove the existence of a scheme to defraud, the Government had to prove that Venson "acted with the specific intent to defraud, which may be inferred from the totality of the circumstances and need not be proven by direct evidence." Godwin, 272 F.3d at 666. A scheme to defraud includes "an assertion of a material falsehood with the intent to deceive or active concealment of a material fact with the intent to deceive." United States v. Pasquantino, 336 F.3d 321, 333 (4th Cir. 2003) (en banc). Here, the evidence amply supported a finding that Venson had the requisite intent to deceive the lenders, regardless of what their decisions ultimately would have been.

5

Next, Venson argues that the Government failed to prove that he directed any of the witnesses to fabricate or misrepresent any fact in the loan documents or to inflate property values. Venson misstates the evidence. As the district court noted at sentencing, "I sat through the trial, and what I saw, Mr. Venson, was witness after witness coming in and fingering you as the person and the mastermind behind this scheme."

Venson also argues that the misrepresentations were not material because the Government failed to present testimony from any of the lenders that the loans would not have been made had they known the truth. However, such testimony was not necessary to support Venson's conviction. Venson's reliance on United States v. Sarihifard, 155 F.3d 301 (4th Cir. 1998) is misplaced. In that case, involving a conviction for making a materially false statement to a government agency, 18 U.S.C. § 371 (2006), this court noted that, "[i]n determining whether a statement is material, it is irrelevant whether the false statement actually influenced or affected the decision-making process. . . . Instead, a statement is material 'if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which is was addressed.'" (citations omitted). Accordingly, we find that the evidence amply supported Venson's convictions.

6

Next, Venson raises several claims challenging the district court's restitution order. We review such orders for abuse of discretion. United States v. Llamas, 599 F.3d 381, 391 (4th Cir. 2010). The Mandatory Victims Restitution Act of 1996 ("MVRA") obligates a sentencing court to order full restitution to identifiable victims of certain crimes, including crimes of fraud or where an identifiable victim has suffered pecuniary loss, without regard to the defendant's economic circumstances. 18 U.S.C. §§ 3663A(c)(1)(A)(ii), (B), 3664(f)(1)(A) (2006). Disputes as to the proper amount of restitution are to be resolved by the district court by a preponderance of the evidence, and the government bears the burden of demonstrating the "amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e).

Venson first argues that this court should vacate the restitution ordered by the district court because it failed to make specific findings as to the victims and amounts owed to each. However, at sentencing, the Government requested that restitution be ordered in the amount shown on the chart submitted as exhibit "Venson 2." The chart identifies the location of the property, the name of the lender, the gross loss amounts, payments made, and net loss amounts as to each property. At sentencing, the district court adopted the list of

7

victims and loss amounts enumerated in Venson 2. We find that this satisfies the requirements of § 3664(f)(1)(a).

Next, Venson argues that successor lenders are not "victims" for restitution purposes. The MVRA defines victim as "any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C.A. § 3663A(a)(2) (2006). Here, the bad loans created by Venson's scheme were sold (sometimes more than once), with each subsequent purchaser of the fraudulently obtained loan exposed to additional risk of default. Accordingly, the district court properly found that the victims are the institutions that held the loans at the time the properties went into default and were subsequently sold at a loss.

Venson also challenges the calculation of loss for purposes of restitution. The district court adopted the Government's method for calculating loss: original loan amount less amount realized upon sale and any payments made toward the mortgage balance. Venson claims that this method is incorrect because "the only possible victims in this case were the original lenders." According to Venson, the original lenders suffered little to no loss because they sold the notes to other lenders. Because successor lenders are victims within the meaning of the MVRA, this claim lacks merit. Cf. United States v. Wilkinson, 590 F.3d 259, 270 n.9 (4th Cir. 2010) (district

8

court may reach a different loss amount under the MVRA than under the Guidelines, USSG § 2B1.1(b)(1)).

Venson next raises several challenges to his 120-month sentence. First, Venson claims that the district court improperly enhanced his sentence based on facts found by the judge and not a jury, citing United States v. Booker, 543 U.S. 220 (2005). Venson's claim is foreclosed by Circuit precedent. See United States v. Perry, 560 F.3d 246, 258 (4th Cir. 2009) (noting that, even after Booker, district courts may "continue to make factual findings concerning sentencing factors by a preponderance of the evidence").

Venson also argues that the district court erred in applying the 18 U.S.C. § 3553(a) (2006) factors in that it "simply ignored the many mitigating facts and circumstances that were presented by the defense." This claim is belied by the transcript of Venson's sentencing hearing and the memorandum opinion issued by the district court, both of which show that the district court carefully considered the mitigating factors identified by Venson. In particular, the court agreed that the bank/victims were also culpable and reduced Venson's Guidelines range on that basis.

Finally, Venson asserts that his sentence is disproportionate when compared with other defendants found guilty of similar conduct. We have observed that "by devising a

recommended sentencing range for every type of misconduct and every level of criminal history, the Guidelines as a whole embrace 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.'". United States v. Johnson, 445 F.3d 339, 343 (4th Cir. 2006). Indeed, the district court here specifically indicated that it had considered this sentencing factor:

> There were many others involved in this scheme who have received or will receive lesser sentences though the Court is aware that these other participants had different and arguably more minor roles. Yet the Court has considered other sentences it has issued over the past several years for similar conduct and recognizes the need to attempt to avoid disparities in sentencing.

Moreover, this court presumes that a sentence within a properly-calculated Guidelines range is reasonable. See Rita v. United States, 551 U.S. 338, 351 (2007). Venson's sentence was fifteen months below the bottom of the advisory Guidelines range. We find that he has failed to overcome the presumption of reasonableness accorded his sentence.

We therefore affirm Venson's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

10